In re Katharine S. Garis, a Lunatic.    Appeal of David V. Garis.

185   497
s190 548
185   497
194   436
185        497
19 SC  548

*Attachments—Contempt—Lunacy.*

An attachment is never issued against a party or a witness unless he is shown to be in contempt of the court. He can only be in contempt by disobeying some process or order of court previously served upon him.

It is improper to issue an attachment for contempt against a person who has failed to deliver the property of a lunatic to the lunatic's committee, where it appears that no rule or order was ever issued or served upon him prior to the rule for attachment; and a written request by the committee of the lunatic, or a mere remark of the court at the hearing of the rule for the attachment that the property must be delivered, is not sufficient to support the attachment.

*Lunacy—Proceedings in forma pauperis—Costs.*

The court may appoint a commissioner in lunacy at the expense of the estate of the lunatic, although the petition for the inquisition has been in forma pauperis.

The court may order that the committee of a lunatic pay the expenses of the lunacy proceedings, without notice to the person who filed the petition for an inquisition.

Argued Jan. 13, 1898. Appeal, No. 272, Jan. T., 1897, by David V. Garis, from order of C. P. No. 3, Phila. Co., March T., 1897, No. 831, issuing an attachment for contempt. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for inquisition in lunacy in forma pauperis.

On March 26, 1897, David Garis presented his petition to the court of common pleas asking for an inquisition in forma pauperis to inquire into the lunacy of his wife, Katharine S. Garis. The court appointed a commissioner, and an inquisition was filed, finding that Katharine S. Garis was a lunatic. On June 1, 1897, the Equitable Trust Company was appointed committee of the estate of said lunatic, which amounted to $8,500. On June 7, 1897, the court, without notice to the petitioner for the inquisition, made an order directing payment of the expenses of the lunacy proceedings by the committee, out of the funds of the estate. On June 19, 1897, the court made absolute a rule granted on the petition of the committee upon David V. Garis, to compel him to deliver to the committee the personal property of the lunatic. On July 3, 1897, the court discharged a rule previously granted to set aside the attachment. In the answer to the latter rule the following averments were made:

On June 3, 1897, this respondent notified in writing the said David V. Garis of the appointment of this respondent as committee of the said lunatic's estate, and further notified the said David V. Garis to surrender all securities and money belonging to the said estate and in his possession.

The said David V. Garis having paid no attention to said notice, on June 7, 1897, this respondent had likewise served on said David V. Garis a notice as follows: "You are hereby notified for the second time that the court of common pleas, No. 3,

of this county has duly appointed this company as committee of the above estate. You will therefore surrender to us at once all securities, furniture, moneys and papers belonging to the above estate."

The said David V. Garis having made no response to either of said notices, on June 14, 1897, this respondent presented its petition to your honorable court, setting forth the above facts, and praying for a rule, which was upon the same day granted, upon David V. Garis, to show cause why an attachment should not be issued against him to compel the production and delivery to petitioner (this respondent) of the personal property of the lunatic's estate, returnable Saturday, June 19, 1897, at 10 A.M.

A copy of said petition and rule for attachment was personally served upon said David V. Garis on June 15, 1897, at his office, No. 1512 North Thirteenth street, Philadelphia.

In response to said rule the said David V. Garis was personally present before your honorable court on June 19, 1897, and was also personally represented before your honorable court at the same time by his attorneys, Samuel M. Roberts, Esq., of Camden, N. J., and Joseph T. Foulke, Esq., of Philadelphia. On the same day, after hearing, your honorable court stated that unless the personal property of the said lunatic's estate was forthwith delivered to this respondent an attachment should issue as prayed for by the committee. The said personal property not being turned over to this respondent by the said David V. Garis, your honorable court upon the same day granted an order that an attachment as prayed for be granted.

*Errors assigned* were (1) in making absolute the rule for an attachment; (2) in appointing a commissioner at the expense of the estate of the lunatic; (3) in the order of June 7, 1897, in making order that the committee pay certain items out of the estate of the lunatic, without notice to the appellant.

*Samuel M. Roberts*, with him *Mellick & Potter*, for appellant. —It is submitted that an attachment to compel the production of property ought not to issue until there has first been made an order by the court requiring the production of said property. No such order had been made in the present case. To have been in contempt, the appellant must have disobeyed the proc-

ess of the law: Com. v. Newton, 1 Grant, 453; Com. v. Perkins, 124 Pa. 36; Tome's App., 50 Pa. 285.

In Wilson v. Wilson, 142 Pa. 247, an attachment issued against the defendant for contempt in not obeying the order of the court to pay certain costs, and in that case, as in every other instance, in which an attachment for contempt has been held valid, it has been for the disobedience of some order previously made: Chew's App., 44 Pa. 250; Pierce v. Post, 6 Phila. 494; Johnson's Est., 11 Pa. 666.

To the second assignment of error, viz: that the court erred in disregarding the prayer of the petition, we cite Cusick's App., 15 W. N. C. 469.

As to the third assignment of error, viz: that the court erred in the order to the committee to pay certain claims against the estate of the lunatic without notice to this appellant, it is submitted by the appellant, as the husband of the lunatic, and thereby interested in her estate, that he was entitled to have notice of the hearing upon the petition presented by the committee for the said order. There is a legal and good defense to the said claim upon the merits, and this petitioner is entitled to an opportunity to appear and present the said defense in the regular way.

*Alfred R. Haig* and *James M. Beck*, for appellee.—An attachment requires the recusant party to be brought before the court, and if there be no sufficient ground for his discharge, it is the duty of the court to order his commitment until obedience be obtained: Com. v. Reed, 59 Pa. 425; Case of Hummel & Bishoff, 9 Watts, 416; Act of June 16, 1836, P. L. 793, sec. 24; 1 Pepper & Lewis's Digest, 884.

Every court of competent jurisdiction is an exclusive judge of contempt against itself: Williamson's Case, 26 Pa. 9; Penn v. Messinger, 1 Yeates, 2; Doyle v. Com., 107 Pa. 20.

Counsel fees are properly chargeable, together with the entire costs of the proceedings, upon the estate of the lunatic; and the court will direct the committee to pay the same: Wier v. Myers, 34 Pa. 377.

It cannot be disputed that the court has the authority to order the committee to pay the costs of maintaining the lunatic, even out of the principal: Act of May 8, 1883, P. L. 30, sec. 39; Act of June 13, 1836, P. L. 597, sec. 20.

There is no statutory provision requiring notice: Hassen-plug's App., 106 Pa. 527; Clark's Case, 22 Pa. 466; In re Weaver, 116 Pa. 225; Com. v. Reeves, 140 Pa. 258.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 18, 1898:

This appeal brings up for review the action of the court below in issuing the attachment to compel the production and delivery to the appellee of personal property, etc., alleged to belong to the estate of the lunatic.

Summary proceedings, such as were contemplated in this case, rest upon the necessity of maintaining the dignity and authority of the courts by punishing both direct and constructive contempts of their authority: Com. v. Perkins et al., 124 Pa. 48; 4 Bl. Com. 285, 286. In the latter, the learned commentator, referring to ordinary cases of contempt by disobedience to orders made in the progress of a cause, says "the proceeding is to be looked upon as a civil execution for the benefit of the injured party, though carried on in the shape of a criminal process for a contempt of court."

Our act of June 16, 1836, section 23, provides that "the power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempt of court shall be restricted (inter alia), . . . . to disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court." In Scott's case, 1 Grant, 237, it was held that this act has no relation to attachments to enforce decrees in equity when the object is not to inflict punishment, but to compel performance of such decrees. While it was also decided in that case that a decree in equity for the payment of money due upon a contract cannot be enforced by attachment since the act of July 12, 1842, abolishing imprisonment for debt, it has been repeatedly held in later cases that the exception, in the act of 1842, of arrests "in proceedings for contempt to enforce civil remedies" applies to cases involving breaches of trust: Chew's Appeal, 44 Pa. 247; Tome's Appeal, 50 Pa. 285; Church's Appeal, 103 Pa. 263; Wilson v. Wilson, 142 Pa. 247. It thus appears that jurisdiction to issue attachment, in cases such as that under consideration, is still derived from the common law.

As was said by Mr. Justice SHARSWOOD at nisi prius (Pierce

v. Post, 6 Phila. 494) : "An attachment is never issued against a party or a witness unless he is shown to be in contempt of the court. He can only be in contempt by disobeying some process or order of court previously served upon him." This is undoubtedly the correct practice, as indicated by the cases above cited, whether under the common law or statutes. No case to the contrary has been cited, and it is confidently believed that no well-considered case to that effect can be found.

The record before us fails to disclose any rule or order on the appellant, prior to the attachment, which he disobeyed or could have disobeyed, because no such rule or order was ever issued or served upon him prior to the rule for attachment. The only thing that is suggested as a possible basis for the attachment proceeding against him is the written request by the appellee, committee of his lunatic wife. It is too clear for argument that such requests or demands, not preceded by a rule to show cause duly issued, served and returned, and an order duly entered by the court, after hearing, are neither rules nor orders of court, and cannot in any proper sense be regarded as the legal equivalents of either. The verbal statement of the court, made at the hearing of the rule for attachment, and recited in the answer to appellant's rule to set aside the attachment proceedings, is of no consequence whatever. Decrees and orders of courts of record cannot be carried in the breast of the judge who makes them. If any regard is to be had to the regular and orderly conduct of judicial proceedings in such courts, all their orders, rules and decrees must be recorded. The verbal order referred to never was recorded, and its first and only appearance in the case is the reference made to it in the appellee's answer to appellant's rule to show cause. Further elaboration is unnecessary. There is nothing whatever in the record to justify the attachment proceedings against the appellant. If he has any property or evidences of indebtedness belonging to the estate of his lunatic wife, he ought to turn them over to the committee and save further trouble.

There is no merit in the second and third specifications of error; nor is there anything in either of them that requires discussion. They are both dismissed. The first specification is fully sustained.

It is accordingly ordered that the petition of the Equitable

Trust Company, committee, etc., praying for a rule on the appellant to show cause why an attachment should not be issued against him, etc., be dismissed, and that all proceedings thereunder be reversed and set aside at the costs of said Equitable Trust Company.