Commonwealth ex rel. Magaziner *v.* Magaziner,
Petitioner.

Argued November 26, 1968. Before BELL, C. J., JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Laurence H. Eldredge,* for petitioner.

*Sidney Ginsberg,* for respondent.

OPINION BY MR. JUSTICE O'BRIEN, April 23, 1969:

This is the culmination of a series of events in an unfortunate family squabble. David A. Magaziner, Jr. and Edith Braunstein Magaziner were married on April 19, 1950 and are the parents of three minor children. In 1967, the parties separated and in August

of that year Mrs. Magaziner commenced a divorce action. In September of 1967, Mrs. Magaziner filed two petitions in the County Court of Philadelphia. One petition was for a writ of habeas corpus, asking the court to award her custody of the children. The other sought support for the three children. The docket entries indicate that custody was awarded to Mrs. Magaziner on September 21, 1967. Support for the children was originally set, on December 14, 1967, at $150.00 per week. Then on January 18, 1968, the County Court, through Judge BONNELLY, issued the following order: "AND NOW, TO WIT, this 18th day of January, 1968, in consideration of the attached agreement which has been filed by both parties, dated December 21, 1967, both parties being represented by counsel and an addendum dated January 17, 1968, it is ORDERED that in accordance with said agreement and addendum, the husband is to pay the sum of one hundred dollars ($100.00) per week for the three children, said payments to be made through the Clerk of the Court, 1801 Vine Street. Said Order is to commence as of today. Any other Order heretofore entered is hereby vacated. The parties have agreed that the custody of the children be with the Mother, AND IT IS SO ORDERED.

"The parties have agreed as to visitation, and IT IS SO ORDERED in accordance with the terms of the agreement. If, at any time, a violation of visitation order is shown to the Court, the Court shall immediately order a hearing."

Mrs. Magaziner obtained a final decree of divorce on February 17, 1968 and by deed dated February 15, 1968, title to premises 3024 Midvale Avenue, Philadelphia (the former home of the parties) was vested in Mr. Magaziner.

In May of 1968 a dispute arose concerning various personal items belonging to Mrs. Magaziner and the

children, and concerning her right to enter her husband's house to get the items. Although the exact factual matrix of the case is unclear and subject to dispute, certain facts appear of record. On May 2, 1968, Judge BONNELLY informed Mr. Magaziner's counsel, I. Raymond Kremer, by letter and perhaps also by telephone, that Mr. Magaziner had breached the agreement to permit Mrs. Magaziner to take the children's and her belongings from the house. The letter further stated: "I shall consider it a Contempt of Court if he fails to comply with the agreement. Mrs. Magaziner will call at the house on Monday morning, May 6th, 10 A.M., for this purpose. If he refuses to comply with the direction of the Court, he will be considered in contempt."

It is not apparent whether any belongings were given to Mrs. Magaziner on the weekend, but it is clear that none were given to her at 10 A.M. Monday morning since Mr. Magaziner was not at home when she called. Mrs. Magaziner and her counsel, Richard Sprague, then appeared, on Monday, May 6th, before Judge BONNELLY who scheduled a hearing for the next day. At that hearing on May 7th Mr. Magaziner did not appear, his attorney stating that Mr. Magaziner could not be reached. Judge BONNELLY, over objection that Mr. Magaziner was not present, then heard the testimony of Mrs. Magaziner and stated, "I will consider him in contempt of court. I will give you an opportunity to present him tomorrow morning at 10 o'clock. If he does not appear, I will hold him in contempt of court."

On Wednesday, May 8th, Mr. Magaziner appeared, along with his counsel and his father. Counsel suggested that on May 16th Mrs. Magaziner could appear at Mr. Magaziner's home to pick up the belongings. This date was then changed to May 17th for the con-

venience of Mrs. Magaziner. When she arrived on May 17th, Mrs. Magaziner was told that all the items to which she was entitled were in the garage. Mrs. Magaziner insisted that she had a right to enter the house, but she was not permitted to do so.

On the same day, May 17th, Mrs. Magaziner, by her counsel, presented to Judge BONNELLY a petition to cite Mr. Magaziner for contempt. The crux of the petition was that she had been denied the right, allegedly authorized by court order, to enter Mr. Magaziner's house for the purpose of ascertaining and obtaining the items to which she was entitled. Judge BONNELLY then signed an order "Let Attachment Issue, Returnable Forthwith" for the arrest of Mr. Magaziner. He was arrested, booked, fingerprinted, and placed in a cell until bail was secured.

On June 28, 1968, Mr. Magaziner filed a petition in this Court. Although at times referred to as a petition asking this Court to take original jurisdiction, in essence it sought a writ of special certiorari so that this Court could exercise its King's Bench powers to correct an allegedly flagrant violation of the petitioner's rights. Such writ was granted on August 5, 1968.

Our review of the record convinces us that petitioner's characterization of the proceedings below has much merit in it. Assuming arguendo that petitioner could be shown to be in contempt of a valid order of the County Court, surely that court did not follow the proper procedure for putting the question in issue. The court issued an order "Let Attachment Issue, Returnable Forthwith." As far back as *Commonwealth v. Snowden*, 1 Brewster 218, 219 (1868), this Court set forth the practice on attachment for civil contempt: "A rule is generally granted in the first instance on affidavits, upon the return of which the defendant answers on oath, the evidence is heard, and if the court

should be of opinion that the fact on which the rule was taken is not sufficiently answered or excused, and that in point of law a contempt has been incurred, an attachment is awarded when the defendant is brought in on this writ to answer interrogatories propounded to him on behalf of the Commonwealth, in whose name the writ always issues, and if he gives such answers as purge him from the criminality, he must be discharged." In other words, it is a several step process that must take place to hold one in civil contempt— rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt. The court here improperly elided the first step. In *Douglass-Whisler B. Co. v. Simpson*, 233 Pa. 517, 82 Atl. 760 (1912), a writ of attachment was issued by the court below to compel the appellee to comply with a court decree; the court then reconsidered and quashed the writ. This Court observed at page 519: "It was issued upon the petition of the appellant, without previous notice to the appellee of the decree against him and without a rule to show cause why it should not issue. The general rule is well settled that a writ of attachment for the summary arrest and imprisonment of a party in a civil proceeding for contempt in violating an order or decree cannot issue without such previous notice as will afford him an opportunity of being heard." See also *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390 (1925).

Yet even if the procedure in the instant case had been letter perfect, Mr. Magaziner would have suffered a gross injustice in being cited for contempt. For it should be beyond question that one can be held in civil contempt only for failure to obey some process or order of court. The petition to cite for contempt recites that at the hearing of May 7, 1968, Judge BONNELLY

told Mr. Magaziner's counsel that Mr. Magaziner was to permit Mrs. Magaziner access to his house, and that Mr. Magaziner, in refusing, should be held in contempt. Not only does such a statement nowhere appear in the transcript of that hearing, but if it did, it would be irrelevant. We quote at length from the opinion of Chief Justice STERRETT in *In re Garis*, 185 Pa. 497, 501, 39 Atl. 1110 (1898): "As was said by Mr. Justice SHARSWOOD at nisi prius (Pierce v. Post, 6 Phila. 494) : 'An attachment is never issued against a party or a witness unless he is shown to be in contempt of court. *He can only be in contempt by disobeying some process or order of court previously served upon him.*' This is undoubtedly the correct practice, as indicated by the cases above cited, whether under the common law or statutes. No case to the contrary has been cited, and it is confidently believed that no well-considered case to that effect can be found. The record before us fails to disclose any rule or order on the appellant, prior to the attachment, which he disobeyed or could have disobeyed, because no such rule or order was ever issued or served upon him prior to the rule for attachment. The only thing that is suggested as a possible basis for the attachment proceeding against him is the written request by the appellee, committee of his lunatic wife. *It is too clear for argument that such requests or demands, not preceded by a rule to show cause duly issued, served and returned, and an order duly entered by the court, after hearing, are neither rules nor orders of court, and cannot in any proper sense be regarded as the legal equivalents of either. The verbal statement of the Court,* made at the hearing of the rule for attachment, and recited in the answer to appellant's rule to set aside the attachment proceedings, *is of no consequence whatever.* Decrees and orders of courts of record cannot

be carried in the breast of the judge who makes them. If any regard is to be had to the regular and orderly conduct of judicial proceedings in such courts, all their orders, rules and decrees must be recorded. The verbal order referred to never was recorded, and its first and only appearance in the case is the reference made to it in the appellee's answer to appellant's rule to show cause. Further elaboration is unnecessary. There. is nothing whatever in the record to justify the attachment proceedings against the appellant." (Emphasis added). In the instant case also, there is no order of court upon which the contempt order is predicated. The only valid order is that of January 18, 1968, set forth at length above, and that order contains nothing requiring Mr. Magaziner to permit Mrs. Magaziner to enter his house, or even to receive the various personal items in dispute for that matter. Although that order refers. to an agreement of the parties of December 17, 1967, amended January 17, 1968, the terms of the agreement are not incorporated into the order except for the section on visitation rights. Assuming arguendo that Mr. Magaziner violated the terms of that agreement, the contempt process of the County Court is surely not the proper vehicle to redress the violation of the contract. The appropriate legal remedy would be an action of assumpsit or replevin or perhaps even a bill in equity for specific performance. Even then, if Mrs. Magaziner won, grave doubt would exist as to whether any judgment, order, or decree could be enforced by an attachment of the person of the defendant. See *Colburn v. Colburn*, 279 Pa. 249, 123 Atl. 775 (1924) and *Silvestri v. Slatowski*, 423 Pa. 498, 224 A. 2d 212 (1966).

Although we understand the feelings of the trial judge faced with a father who required litigation to force him to perform the responsibilities of that status,

we cannot allow the processes of the law to be prostituted to achieve what may in the end be a just result. We must always remain a nation of laws not of men— *non sub homine sed sub deo et lege.*

It should be obvious at this point that the proceedings below were sorely lacking in due process. However, we need not enter any order ourselves because the case appears to be moot. The case below was transferred from Judge BONNELLY to Judge MEADE, who on August 6, 1968, dismissed the petition to cite for contempt. Although this Court entered its order allowing the review on August 5, 1968, when the court below acted, it had not yet been served with the writ of special certiorari issued by this court. In *Corace v. Balint*, 418 Pa. 262, 276, 210 A. 2d 882 (1965), this Court stated: "A court of first instance cannot further proceed with a cause *after it has been served with a writ of certiorari* issued by an appellate court. . . . This has been the common law rule . . . and has been consistently followed." (Emphasis added). This rule is eminently sensible, for it avails nothing to render nugatory action taken in the nisi prius court without knowledge of the granting of review.

Mr. Magaziner contends that the case is not moot because he has been unjustly arrested, as a result of which he now has a criminal record. However, a simple proceeding to remedy this exists in what is now the Criminal Division of the Common Pleas Court. Mr. Magaziner can there present his motion to expunge the arrest from his record. This Court is not the proper body to which such a motion should be presented.

The case is dismissed as moot.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice EAGEN took no part in the consideration or decision of this case.

OPINION BY MR. JUSTICE JONES CONCURRING IN PART AND DISSENTING IN PART:

While I agree that, both procedurally and substantively, Magaziner was improperly held in contempt, I disagree with the suggestion in the majority opinion that Magaziner must pursue another remedy to expunge his arrest from the record.

The majority opinion finds that the proceedings which led to the contempt order were "sorely lacking in due process" and that Magaziner, under the circumstances, "suffered a gross injustice in being cited for contempt." As a result of this unjust and highly improper contempt order, Magaziner "was arrested, booked, fingerprinted, and placed in a cell until bail was secured."

Our Court is empowered "to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the Constitution and laws of this Commonwealth" (Act of June 16, 1836, P. L. 784, §1, 17 P.S. §41). I believe that we have the inherent power to right the wrong done to Magaziner in *this* proceeding. I would, therefore, not only dismiss the proceedings but remand the matter to the court below to expunge from the record any matters which followed the entry of the contempt order.