250 Pa. Superior Ct. 145 (1977)
378 A.2d 868
JOSEPH HORNE CO., a Division of Associated Dry Goods Corporation
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 95-95A, Edward Rimmel, Jeffery Whalen, Joseph Tighe, Richard Siwicki, George P. Kern, Jr., and John and Jane Doe, said names being fictitious; true names being unknown, and any other individuals, labor organizations and labor unions acting in concert.
Superior Court of Pennsylvania.
Argued April 14, 1977.
Decided October 6, 1977.
*147 Timothy P. O'Reilly, Pittsburgh, for appellant at Nos. 100 and 218.
Edward J. Van Allen, Pittsburgh, for appellant at Nos. 139 and 266.
Timothy P. O'Reilly, Pittsburgh, for appellee at Nos. 139 and 266.
Edward J. Van Allen, Pittsburgh, for appellee at Nos. 100 and 218.
Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.
HOFFMAN, Judge:
The lower court entered two orders in the instant case. In its first order, dated September 8, 1976, the court held International Union of Operating Engineers, Local Union No. 95-95A (hereinafter "union") in civil contempt of a preliminary injunction and required the union to pay a $25,000 fine to Joseph Horne Co. (hereinafter "company"). On appeal from this contempt order, the union contends that the lower court did not afford the union due process at the hearing on the preliminary injunction and did not allow the union sufficient time to prepare a defense to the contempt *148 charge. Moreover, the union contends that the evidence does not support a finding of contempt. The company also appealed this order; it asserts that the lower court should have granted damages in the amount of $110,530.71. We reverse the September 8, 1976 contempt order because the lower court did not allow the union sufficient time to prepare its defense to the contempt charge. On October 8, 1976, the lower court issued an order denying consideration of exceptions filed by the union to the September 8 contempt order. Both the company and the union appealed this order. We affirm the lower court's October 8 order.
On August 8, 1975, after negotiations over a collective bargaining agreement failed, the union commenced a strike against Joseph Horne Co. The union established picket lines at the company's facilities in Pittsburgh. On August 11, 1975, the company filed a complaint in equity which requested the court to issue a preliminary injunction restraining certain alleged picket line misconduct by the union and its officers. According to the company, the lower court took no immediate action on August 11, 1975, because union officers assured the court and the company that its picket line conduct would be peaceful and would not block ingress and egress to and from the company's facilities. Instead, the lower court scheduled a hearing for 1:30 p.m., on August 12, 1975.
On the morning of August 12, 1975, company attorneys appeared ex parte before the lower court and presented witnesses who testified that the union and the officers had breached their assurances by engaging in mass picketing and violence which blocked access to company property. The company asserted that it notified the union of its attempt to secure a preliminary injunction. The lower court issued a preliminary injunction enjoining specified unlawful picketing activity by the union.[1]
At 1:30 p.m. on August 12, 1975, union and company attorneys appeared for the previously scheduled hearing on *149 the preliminary injunction. The court and counsel for both parties conferred in chambers for two and one-half hours. The court then modified the terms of the preliminary injunction.[2] Union counsel informed the court the union was not pleased with the court's order, but would abide by it. The union did not appeal this order.
On August 14, 1975, the company filed a motion to hold persons in contempt. The company requested the court, on the basis of an accompanying affidavit and testimony to be presented, to direct the Sheriff of Allegheny County to attach the persons of two named union officers and "any and all other persons violating the preliminary injunction order of this court" and to bring them before the court to show why they should not be held in contempt. Simultaneously, the company requested a writ of assistance providing additional sheriff's deputies to enforce the preliminary injunction. The court issued the requested writ.
On August 14, 15, and 18, the company presented testimony in support of its contempt motion. The union's attorney cross-examined the company witnesses. On August 18, after the conclusion of the company's case, the lower court issued *150 a rule to show cause and directed the union to proceed immediately to its defense. Union counsel asserted that he would need at least ten days to file an answer to the rule and to prepare a defense. The court denied the union's request for a ten day extension, but did grant a two day postponement until August 21, 1975.
On August 21, 1975, the lower court granted the company's request to bifurcate the proceedings by holding separate hearings on the union's alleged contempt and on the appropriate amount of damages stemming from union misconduct. The union then presented its defense, thus concluding the hearing on the issue of the union's alleged contumacious behavior. In September, 1975, the parties settled the strike which spawned this litigation.
On February 25, and 26, 1976, the lower court, prior to making any ruling on the question of contempt, conducted a hearing on the issue of damages. On September 8, 1976, the lower court rendered an order and accompanying opinion holding the union in contempt of the preliminary injunction entered on the afternoon of August 12, 1975. The order imposed a $25,000 fine payable to the company in compensation for losses sustained as a result of the union's violation of the preliminary injunction. On September 17, 1976, the union appealed this contempt order. On September 21, 1976, the union filed exceptions to the lower court's contempt order. On September 28, the company filed counter-exceptions to the contempt order. On the same date, the union filed supplemental exceptions with the lower court. On October 7, the company appealed the lower court's contempt order. On October 8, the lower court issued an order which denied consideration of the union's exceptions and refused reconsideration of the September 8 contempt order. Both parties appealed this order. We have consolidated the appeals of both parties from the September 8 and October 8 orders.

I
We first consider the propriety of the October 8 order. The union contends that the lower court erred in refusing to *151 consider its exceptions to the September 8 contempt order. In particular, the union asserts that pursuant to Rules 1517-1519, Pa.R.Civ.P.; 42 Pa.C.S. §§ 1517-1519, the September 8 contempt order was an "adjudication" or decree nisi to which the union was entitled to file exceptions which would be heard by a court en banc before the entry of a final decree.[3] The lower court refused to consider the union's exceptions because: (1) the contempt order was not an "adjudication" subject to Rules 1517-1519, and (2) the union filed an appeal with the Superior Court before filing its exceptions, Pa.R.App.P. 1701. The company supports the lower court's refusal to consider the union's exceptions, but adds that if the union was entitled to consideration of its exceptions, its failure to file exceptions before lodging an appeal constituted a waiver of all matters that could properly be raised by exceptions.[4] We note, sua sponte, that if the contempt order is, in fact, an adjudication or decree nisi subject to Rules 1517-1519, then the appeals from the September 8 contempt order would be interlocutory and we would quash the appeals. Lafayette Radio Electronics Corp. of Monroeville v. Jonnel Enterprises, Inc., 435 Pa. 49, 255 A.2d 533 (1969).
In College Watercolor Group, Inc. v. William H. Newbauer, Inc., 468 Pa. 103, 360 A.2d 200 (1976), our Supreme Court considered whether a trial court had jurisdiction to entertain exceptions to its own order of contempt. The court held that a contempt order imposing sanctions on a party is final and appealable when it is entered. See also *152 In Re Bloom, 423 Pa. 192, 223 A.2d 712 (1966); Commonwealth v. Heston, 292 Pa. 63, 140 A. 533 (1928). Accordingly, the Court asserted that the rules specifying the procedures for filing and considering exceptions to an adjudication do not apply to contempt orders. See also Calantzis v. Collins, 440 Pa. 354, 269 A.2d 655 (1970). However, a trial court may, in its discretion, reconsider its contempt order if a party files a petition alleging the discovery of grounds for a rehearing pursuant to Rule 1522, Pa.R.Civ.P.; 42 Pa.C.S. § 1522. In the instant case, the lower court properly declined to exercise its discretion to reconsider its final contempt order, particularly in light of the fact that the union appealed the contempt order before filing its exceptions.[5]

II
We next consider the union's challenges to the validity of the September 8 order holding the union in contempt and requiring it to pay the company $25,000. The union first contends that the lower court did not accord the union procedural due process before entering the modified preliminary injunction on the afternoon of August 12, 1975. *153 This contention is baseless. Union counsel participated in the August 12 afternoon session at which the lower court issued the modified preliminary injunction. Counsel raised no objection to the nature of the proceedings; indeed, he stated that the union would abide by the injunction. Moreover, parties must obey a preliminary injunction, even if invalid, entered by a court with jurisdiction over the subject matter and parties until the order is reversed by orderly and proper proceedings. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Philadelphia Marine Trade Assoc. v. International Longshoremen's Assoc., 453 Pa. 43, 308 A.2d 98 (1973). The union did not appeal the preliminary injunction; therefore, the union was obligated to obey the order.
The union next contends that the lower court did not afford the union sufficient time to prepare a defense to the company's contempt allegations. In particular, the union asserts that the lower court failed to follow the multi-step process which must take place in order to hold one in civil contempt. Commonwealth ex rel. Magaziner v. Magaziner, 434 Pa. 1, 253 A.2d 263 (1969).
In Commonwealth v. Snowden, 1 Brewst. 218 (1868), our Supreme Court, in a nisi prius decision per SHARSWOOD, J., considered the appropriate procedure for holding a person in civil contempt. James Ross Snowden was Prothonotary of the Pennsylvania Supreme Court. A prisoner had been found in possession of naturalization certificates purportedly signed and sealed by Snowden. SHARSWOOD, J., granted a rule on Snowden to show cause why an attachment should not issue against him. At a hearing on the rule, Snowden produced evidence that in fact he had not signed the certificates. Nevertheless, SHARSWOOD, J. granted the attachment because the impression of the seal appeared to be genuine. Snowden then filed an answer in which he denied any knowledge of the certificates. After another hearing, SHARSWOOD, J. concluded that Snowden did not know about the certificates and had not been guilty of gross negligence in allowing the certificates to be obtained surreptitiously. *154 Accordingly, SHARSWOOD, J. discharged the rule. Our Supreme Court explained the appropriate procedure in civil contempt cases as follows:
"A rule is generally granted in the first instance on affidavits, upon the return of which the defendant answers on oath, the evidence is heard, and if the Court should be of opinion that the fact on which the rule was taken is not sufficiently answered or excused, and that in point of law a contempt has been incurred, an attachment is awarded when the defendant is brought in on this writ to answer interrogatories propounded to him on behalf of the Commonwealth, in whose name the writ always issues, and if he gives such answers as purge him from the criminality, he must be discharged." supra at 219.
In Commonwealth ex rel. Magaziner v. Magaziner, supra, 434 Pa. at 6, 253 A.2d at 266, the Supreme Court reaffirmed and summarized the procedure involved in Snowden for holding a person in civil contempt. "In other words, it is a several step process that must take place to hold one in civil contempt  rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt." See also Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity, 449 Pa. 194, 296 A.2d 504 (1972); Douglass-Whisler B. Co. v. Simpson, 233 Pa. 517, 82 A. 760 (1912); New Brighton and N.C.R. Co.'s Appeal, 105 Pa. 13 (1884);[6]Crislip v. Harshman, 243 Pa.Super. 349, 365 A.2d 1260 (1976); Simmons v. Simmons, 232 Pa.Super. 365, 335 A.2d 764 (1975). The Supreme Court reversed the lower court's contempt order in Magaziner because appellant had been arrested and imprisoned without a prior opportunity to be heard.
In the instant case, the lower court did not strictly follow the five step procedure specified in Magaziner. In particular, *155 the court did not afford the union either an opportunity to file an answer or a second hearing. The company responds, however, that the first answer and hearing contemplated by Magaziner is solely a procedural guarantee that a person will not be arrested and imprisoned without a prior hearing. In the instant case, no union officers or members were arrested or imprisoned. According to the company, therefore, the lower court was not required to conduct two separate hearings before rendering an adjudication of contempt.
We do not now decide whether a court must adhere to the five step, two hearing process specified in Snowden and Magaziner when the alleged civil contemnor has not in fact been arrested or imprisoned.[7] Instead, we hold that the lower court did not permit the union sufficient time to prepare its defense to the charge of contumacious conduct.
In the instant case, the lower court directed the union to present its defense immediately after the company concluded its presentation of testimony on August 18, 1975; union counsel responded that he would need at least ten days to prepare a defense. In an ensuing discussion with counsel, the court conceded that any violations of the preliminary injunction had ceased as a result of the August 14 writ of assistance and that a state of emergency no longer existed. Moreover, the court stated that imprisonment of union officers would not be an appropriate civil contempt remedy because imprisonment could no longer coerce compliance with the preliminary injunction. Therefore, the company *156 pressed the civil contempt hearing because it wished to secure compensation for damages inflicted by the union's breach of the preliminary injunction. The lower court granted the union an additional two days to prepare its defense, but refused to consider an additional extension because it wanted to conclude the entire matter in August, before the congested September trial calendar commenced. On August 21, the lower court, however, granted the company an additional six months to gather evidence on damages stemming from the union's conduct. Finally, the court did not render a final contempt order until more than one year after the contempt hearings.[8]
Regardless of whether Snowden or Magaziner required two separate hearings in the case at bar, we believe that the lower court should have granted the union additional time in which to file an answer and prepare a defense. Once the emergency giving rise to the civil contempt proceedings subsided and imprisonment became an inappropriate civil contempt remedy, the contempt proceedings were transformed, in effect, into an attempt to secure damages normally recovered through a private trespass action subject to the full panoply of civil procedural rules. No public interest in vindicating the authority of the court or restoring public order compelled speedy resolution of the contempt charge; only the company's private interest in compensation remained to be vindicated. At the same time, a finding of contempt could, and did, subject the union to liability for a sizeable amount of damages. Given the essentially private nature of the contempt proceedings after August 18, and the possible imposition of a large amount of damages, the lower court abused its discretion when it refused to allow the union additional time to file an answer and to prepare a *157 defense. Therefore, we reverse the order of the lower court.[9]
Order of October 8, 1976 affirmed. Order of September 8, 1976, reversed.
VAN der VOORT, J., did not participate in the consideration or decision of this case.
NOTES
[1] The lower court ordered the union to cease and desist from unlawful picketing activity including hampering or obstructing the company's business, intimidating the company's employees, agents, and customers in order to make them refrain from transacting business with the company or entering company premises, blocking access to and from company property, damaging or destroying company property, and assaulting, injuring, or slandering employees exercising their legal right to access to company property. The injunction specified that picketing would be limited to eight pickets at any one time remaining constantly in motion, walking at least 15 feet apart, and at a distance no closer than six feet from the company's property line.
[2] The modified injunction restrained the same activities specified in footnote one. The order stated that no more than two pickets could gather at each one of the three entrances to the company's store in downtown Pittsburgh and that five pickets could gather at the Duquesne Boulevard docks of the company's downtown store. No more than twenty pickets could gather at the company's Pittsburgh warehouse. Two pickets could congregate at each of the two driveway entrances to the warehouse. The remaining sixteen pickets could not come closer than ten feet to the driveways and had to be at least ten feet apart.
[3] Rule 1517 specifies that the court shall make an adjudication in an action in equity. The adjudication shall consist of a statement of the issues, the pertinent facts, a discussion of the questions of law involved and the court's conclusions of law, and a decree nisi. Rule 1518 entitles a party to file exceptions to the court's findings of fact, conclusions of law, rulings on evidence and decree nisi. Such objections must be filed within twenty days. Matters not covered by final exceptions are deemed waived. Rule 1519 provides that exceptions shall be heard by a court en banc which shall sustain or dismiss them and enter an appropriate order.
[4] The company's brief does not make clear why it appealed the October 8 order.
[5] Rule 1701, Pa.R.App.P. provides, in pertinent part:

"(a) General rule. Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter.
"(b) Authority of lower court or agency after appeal. After an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may:
"(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:
"(i) an application for reconsideration of the order is filed in the lower court or other government unit within the time provided or prescribed by law; and
"(ii) an order expressly granting reconsideration of such prior order is filed in the lower court or other government unit within the time prescribed by these rules for the filing of a notice of appeal, petition for allowance of appeal or petition for review of a quasijudicial order with respect to such prior order, or within any shorter time provided or prescribed by law for the granting of reconsideration." Under Rule 1701, the lower court has discretion to decline to review its order once the aggrieved party has filed an appeal with our Court.
[6] In New Brighton and N.C.R. Co.'s Appeal, supra, the Supreme Court stated that in cases of extraordinary emergency, a court, in its discretion may issue an attachment without a prior hearing. See also Douglass-Whisler B. Co. v. Simpson, supra.
[7] We do note that the following cases involve arrests and imprisonment without a prior hearing: Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity, supra; Commonwealth ex rel. Magaziner v. Magaziner, supra; Douglass-Whisler B. Co. v. Simpson, supra; New Brighton and N.C.R. Co.'s Appeal, supra. On the other hand, it does not appear that Commonwealth v. Snowden, supra; Crislip v. Harshman, supra; or Simmons v. Simmons, supra; involved situations in which an alleged civil contemnor was arrested or imprisoned without a prior hearing. Nevertheless, in these cases, the appellate court applied the five step, two hearing procedure first articulated in Snowden and affirmed in Magaziner.
[8] We mention the delay in the hearing on damages and the issuance of the final contempt order only to show that an emergency did not require an immediate conclusion of the entire contempt proceeding. We do not mean to impugn in any way the impartiality of the trial court.
[9] Because of this disposition, we do not determine whether the evidence supported a finding of contempt.