512 A.2d 1297

Commonwealth of Pennsylvania, Department of Environmental Resources, Plaintiff *v.* Michael G. Sabia and Michael G. Sabia, Jr. and Warehouse 81 Limited Partnership, and Domino Salvage, Inc., Defendants.

Heard May 29, 1986, before Senior Judge LEHMAN.

*Michele Straube,* Assistant Counsel, for plaintiff.

*Hershel J. Richman,* with him, *David J. Brooman;* of Counsel: *Cohen, Shapiro, Polisher, Shiekman and Cohen,* for defendants.

OPINION BY SENIOR JUDGE LEHMAN, June 27, 1986:

The plaintiff, the Department of Environmental Resources (DER), initiated the most recent step in this dispute by filing a petition for contempt of our November 30, 1983 enforcement Order directing defendants Michael G. Sabia, Michael G. Sabia, Jr., Warehouse 81 Limited Partnership and Domino Salvage, Inc. (Sabia) to comply with DER's order of September 3, 1982, which found the defendant in violation of The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.1-.1001 and the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, 35 P.S. §§6018.101-.1003. In response, Sabia asks this Court to declare DER's contempt petition to be deemed criminal in nature, (thereby entitling Sabia to a jury trial[1]) and, in the alternative, to dismiss the contempt petition for lack of conformity to law.[2] Because we find that Sabia's motion to have this Court deem the present action criminal in nature should be denied, we deny his jury trial demand. In addition, we deny Sabia's motion to strike the petition.

## Motion to Declare Contempt Petition Criminal

In support of his motion to deem the contempt proceedings criminal, Sabia contends that the dominant purpose of a contempt citation, should we issue one in this matter, is punitive rather than remedial. Our Supreme Court has said that the test to determine whether a contempt is civil or criminal is to ascertain its dominant purpose. *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956).

If the dominant purpose is to prospectively coerce the contemnor to comply with an order of

---

[1] *See Codispoti v. Pennsylvania,* 418 U.S. 506 (1974).

[2] Pa. R.C.P. No. 1017(b)(2); Pa. R.A.P. 1517.

the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

In re Martorano, 464 Pa. 66, 77, 346 A.2d 22, 28 (1975) (footnotes omitted).

To aid the courts in determining the dominant purpose of a contempt proceeding, the Supreme Court in *Knaus* articulated five factors that are generally to be considered. A contempt action is usually said to be civil:

(1) where the complainant is a private person as opposed to the government or a governmental agency;

(2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action;

(3) where holding the defendant in contempt affords relief to a private party;

(4) where the relief requested is primarily for the benefit of the complainant;

(5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

*Knaus*, 387 Pa. at 378, 127 A.2d at 673.

DER is a government agency acting in its governmental capacity and bringing this action pursuant to its statutory authority. The first consideration thus indicates criminal contempt.

Second, Sabia argues that the present contempt action is too attenuated from the underlying order to be said to originate from that earlier order. We agree, however, with DER that the mere passage of time does not

remove a contempt action from its underpinnings —namely, an order of this Court with which the defendant has failed to comply. In this case, although two and one-half years have lapsed since this Court issued its enforcement Order, DER nonetheless bases its contempt petition on Sabia's alleged failure to comply with that Order. The contempt proceeding arises directly from and is an integral part of DER's original enforcement action. Analysis of the second *Knaus* factor indicates that this is a civil contempt action.

Regarding the third and fourth *Knaus* factors, which may be considered together, we cannot reach any other conclusion but that the Commonwealth Department of Environmental Resources is *not* a private party, and that the relief requested would *not* primarily benefit a private party, though DER would argue otherwise. To say in this case that DER is a private entity and the sole beneficiary of any relief granted by a contempt order is to say that the Commonwealth and its agencies do not act for the benefit of the citizens of this Commonwealth.

Finally, regarding the fifth factor, both The Clean Streams Law and the Solid Waste Management Act provide for the imposition of both criminal *and* civil penalties.[3] Nonetheless, in order to support a criminal contempt action, this factor, we believe, contemplates "acts complained of" that are violations of a crimes code rather than violations of regulatory statutes or rules promulgated thereunder. "[W]here the acts of contempt . . . do not *of themselves* constitute crimes . . ." they will point to civil contempt. *Knaus* (emphasis added). *See also Commonwealth v. Charlett*, 481 Pa. 22, 391 A.2d 1296 (1978).

---

[3] *See* 35 P.S. §§691.601-.602, 691.605, and 35 P.S. §§6018-.605-.606.

We conclude that the dominant purpose of any contempt order issuing in this case would be civil in nature. We arrive at this conclusion by applying a functional analysis of this Court's purpose in punishing a contemnor. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980); *In re Martorano*. We find that such a contempt order would be (1) prospective and not intended to punish past acts, (2) intended to enforce compliance with DER's underlying order, and (3) would be lifted when the contempt is purged. As has often been said in civil contempt proceedings, the contemnor "holds the keys to his cell in his own pocket" in that he can free himself of the contempt by removing or otherwise alleviating the violations. Therefore, because we are proceeding in a civil contempt action, Sabia is not entitled to a jury trial and we accordingly deny his demand.

## Motion to Strike Contempt Petition

Sabia next asks this Court, if these proceedings are determined to be civil, to strike DER's petition for contempt for lack of conformity to law. Sabia argues that the proceedings do not follow the procedures established by our Supreme Court in *Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1969) for civil contempt actions.

In *Magaziner*, the Court said that "it is a several step process that must take place to hold one in civil contempt—rule to show cause why an attachment should not issue, answer and hearing, rule absolute (arrest), hearing on the contempt action." In quoting *Douglass-Whisler B. Co. v. Simpson*, 233 Pa. 517, 82 A. 760 (1912) with approval, the *Magaziner* court observed that "[t]he general rule is well settled that a writ of attachment for the summary arrest and imprisonment of a party in a civil proceeding for contempt in violation of an order or decree cannot issue without such previous

notice as will afford [a contemnor] an opportunity of being heard." *Id.* at 6, 253 A.2d at 266-67. Because we conclude that the dictates of *Magaziner* have been substantially complied with, we deny Sabia's motion to dismiss DER's contempt petition.

The rule laid down in *Magaziner* is based on early authority, *Commonwealth v. Snowden*, 1 Brewst. 218 (1868) which clearly did not contemplate the extensive administrative agency review process (including the hearing and adjudication stages) in our modern legal system. The rapid growth of administrative law has been accompanied by procedural safeguards, built into the administrative agency review process by statute and by case law. It is in light of this trend that we examine the procedures followed in this case.

On September 3, 1982, DER issued its order finding all the defendants[4] in violation of The Clean Streams Law and the Solid Waste Management Act on property where defendants had allowed certain waste piles to accumulate. Sabia filed an appeal with the Environmental Hearing Board (EHB), but the appeal was dismissed because of appellants' failure to comply with applicable regulations. No further appeal was taken.

On September 20, 1983 DER initiated an enforcement action requesting this Court to determine Sabia's legal duty to comply with DER's order. After the filing of Sabia's answer and new matter, DER moved for judgment upon admissions. Thereafter, as a result of pre-trial conference, both parties agreed to file briefs in

---

[4] DER's order named Domino Salvage, Inc., Warehouse 81 Limited Partnership, Michael G. Sabia and Michael G. Sabia, Jr. as defendants. Michael G. Sabia and Michael G. Sabia, Jr. are the general limited partners respectively in the Warehouse 81 Limited Partnership. The role of the fourth defendant, Domino Salvage, Inc., is contested, but it was a named party in the administrative proceeding.

support of their respective positions on the legal issue raised by Sabia's answer, which asserted several equitable defenses to DER's petition for enforcement. In addition, Sabia was directed to file an affidavit regarding its reasons for not appealing the EHB order dismissing its appeal. We then issued an Order granting DER's motion for judgment upon admissions and directing Sabia to comply with DER's September 1982 administrative order. Several pleadings not pertinent to the issue raised here were subsequently submitted and ruled upon by this Court[5] and, after some delay, DER brought this petition for contempt.

We are now faced with a situation wherein the imputed contemnor Sabia was given an opportunity for a hearing at the administrative agency level to appeal DER's order and was also given an opportunity to answer the complaints against him prior to this Court's enforcement Order. In addition, Sabia has been given notice of the contempt action against him by virtue of service of DER's petition and by this Court's order directing him to appear. We must decide whether the proceedings thus far comport with the five-step, two-hearing process called for by our Supreme Court in *Magaziner v. Magaziner.*

Although Sabia correctly asserts that a rule to show cause and a rule absolute have not been entered, we do

---

[5] Defendants filed a complaint naming the Philadelphia National Bank as an additional respondent (sic) in this matter on January 3, 1984. Philadelphia National Bank (PNB), as an additional defendant, filed preliminary objections to defendants' complaint, raising, *inter alia* the question of this Court's jurisdiction to entertain the complaint against it. After consideration of briefs and oral argument on the matter, this Court ordered that the complaint naming PNB as an additional defendant be transferred to the Court of Common Pleas of Montour County. *See* Order of June 12, 1984 and accompanying Memorandum Opinion at No. 2355 C.D. 1983, filed: June 12, 1984.

not find this omission fatally defective. In *Schnabel Associates v. Building and Construction Trades,* 338 Pa. Superior Ct. 376, 487 A.2d 1327 (1985), the Superior Court held that in light of the fact that appellant was provided with other procedural safeguards, the fact that the trial court in a contempt proceeding omitted two of the five stages (including the second, contempt citation hearing) was not determinative.

Moreover, although the nomenclature used to describe the various stages of the proceedings thus far may appear inconsistent with the *Magaziner* rule, when we examine these proceedings we find that, in substance they comport with its requirements.[6] In *Crislip v. Harshman,* 243 Pa. Superior Ct. 349, 365 A.2d 1260 (1976), the Superior Court held that a lower court order, informing an imputed contemnor that he was in arrears of support payments (thus in contempt) and directing him to appear for a hearing, constituted a rule to show cause. In *Rouse Philadelphia Inc. v. Ad Hoc '78,* 274 Pa. Superior Ct. 54, 417 A.2d 1248 (1979), it was held that a multi-step process that included three hearings at which the contemnor had an opportunity to be heard, afforded the contemnor sufficient procedural safeguards to satisfy due process. As the Superior Court has said, "the conclusion we draw . . . is that the essential due process requisites for a finding of civil contempt are notice and opportunity to be heard." *Schnabel,* 338 Pa. Superior Ct. at 390, 487 A.2d at 1334.

We likewise conclude that when an imputed contemnor is given; a) an opportunity for a hearing on the underlying violations at the administrative agency level; b) an opportunity to appeal the final administrative ac-

---

[6] Unlike courts of common pleas, which make extensive use of the issuance of rules in their proceedings, this Court follows a practice, pursuant to Pa. R.A.P. 123, whereby the party seeking relief makes an application to the court.

tion; c) an opportunity to challenge the notice of the administrative action prior to the issuance of this Court's enforcement Order; d) notice of subsequent contempt proceedings by service of a petition for contempt; and e) a Court order to appear at a hearing on the allegations of contempt, then the requirements of due process articulated by our Supreme Court in *Magaziner v. Magaziner* are satisfied. We note further that Sabia will suffer punishment, if at all, only after a determination of contempt at a future hearing. Sabia will have a chance to raise all defenses, legal and equitable, and to introduce all relevant evidence in his defense at this hearing on the contempt action. This stage of the proceeding we cannot, of course, dispense with.

Accordingly, we deny Sabia's motion to strike DER's contempt petition for lack of conformity to law and will proceed to fix a time and date for hearing on said petition.

## ORDER

NOW, June 27, 1986, upon consideration of plaintiff's motion to compel defendants to comply with notice of depositions, defendants' motion to declare the Commonwealth's petition for contempt criminal and jury trial demand, and in the alternative, defendants' motion to strike the petition for contempt for lack of conformity to law, and after a hearing, it is Ordered:

1) Defendants' motion to declare the Commonwealth's petition for contempt criminal is denied.

2) Defendants' demand for jury trial is denied.

3) Defendants' motion to strike the petition for contempt for lack of conformity to law is denied.

4) That portion of our May 20, 1986 Order staying discovery is hereby vacated and the parties may proceed with discovery.

5) Hearing on plaintiff's petition for contempt is fixed for September 3, 1986, at 10:00 a.m. in Courtroom Number One, Fifth Floor, South Office Building, Harrisburg, Pennsylvania.