Bata *v.* Central Penn National Bank of Philadelphia (et al., Appellant).

Argued November 12, 1968.  Before Bell, C. J., Cohen, Eagen, O'Brien and Roberts, JJ.

*A. Evans Kephart* and *Harold E. Stassen,* with them *Joseph N. Bongiovanni, Jr.,* and *Stassen & Kephart,* for appellant.

*Lewis H. Van Dusen, Jr.,* with him *Morris R. Brooke, Robert MacCrate,* and *Drinker, Biddle & Reath,* and *Sullivan & Cromwell,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, February 10, 1969:

The case now before us is merely another stage in a litigation that has been in progress for twenty-one years. In March of 1962, over six years ago, a comprehensive settlement agreement was entered into, apparently terminating the litigation. A final decree was entered in 1965, after appellant refused to comply with the settlement agreement, and this Court affirmed. *Bata v. Central-Penn National Bank,* 423 Pa. 373, 224 A. 2d 174 (1966), cert. denied, 386 U.S. 1007 (1967). The matter now before us involves the alleged refusal of appellant to carry out the terms of the final decree. Although the facts are complicated, for present purposes it is enough to say that the 1965 decree gave appellees the right to certain assets which were the subject of an action in Great Britain, and appellant was thus ordered to terminate the English action. This required the taking out of letters of administration for appellant's estate, and the entering of a "Tomlin Order" terminating the action.

The court below found that appellant failed to comply with the 1965 decree and with subsequent 1967 orders to enforce it "although fully able to do so without risk or burden . . . in order to preserve his avowed intention to attempt to relitigate in another forum in the future matters already settled by the comprehensive settlement agreement and fully and finally determined by the Final Decree of October 18, 1965 enforcing that

agreement." Judges REIMEL and SMITH found "that defendant's conduct has been contumacious and that he has not made a bona fide effort to perform and that he will not do so and has no intention of so doing, despite protestations of willingness to the contrary." As a result the court held appellant in civil contempt of its 1967 orders and levied combined fines of $250,000,* noting that "in the event of defendant's ultimate compliance with the decree he may apply for remission of the fines imposed against him subject to plaintiff's right of damages including all expenses and attorney's fees."

The record in this proceeding runs for several volumes, and in our opinion supports and probably compels the action of the court below. "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and wilfully refuses obedience, does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the wilfull and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge." *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 392 Pa. 500, 524-25, 140 A. 2d 814, 826-27 (1958) (concurring opinion of BELL, J.). Since

---

* Appellant was first fined $100,000 by order dated August 10, 1967. When appellant *continued* not to comply with the various orders to which he was subject, he was fined an additional $150,-000 by order dated November 17, 1967.

the purpose of a civil contempt citation can also be to coerce compliance, as well as to compensate the injured party for losses sustained, *Id.,* the same standard of discretion logically applies.

To affirm the order of the court below, we need only point to several incidents which are but a small aspect of a record that for literally volumes sets out the disdain with which the decrees and orders of courts of this Commonwealth were treated. The record in the case before us indicates that despite being told several times by appellant's English solicitors that they could not enter the necessary Tomlin Order, absent proper instructions to do so, appellant's counsel failed to give those instructions. This conduct persisted after the 1967 orders which specifically directed appellant to take the necessary steps to carry out the Final Decree of 1965.

Appellant's counsel continually maintained that £49,000 in dividends belonged to appellant, despite the fact that the 1965 decree had conclusively awarded these assets to appellee. The record rather clearly indicates that appellant's counsel was in effect demanding that appellee concede that appellant was entitled to these assets before the Tomlin Order would be entered.

At a hearing on August 29, 1967, appellant's counsel admitted that appellant was not complying with the Final Decree because "at some time we feel that justice will prevail and this fraud will be proved." The "fraud" refers to a claim made in the 1965 action, a claim which this Court and the court below characterized then as "an exercise in obfuscation." Appellant may believe that our earlier determination was incorrect, but his legal remedies have been exhausted; in no way can he be allowed to openly defy a valid decree of the courts of this Commonwealth, affirmed by

this Court, in the hope that he might some day be able to improperly relitigate the matter.

Appellant refused to take out English letters of administration which were prerequisites to the entry of the Tomlin Order. Although appellant has questioned this procedure and has claimed that it was barred by an "insurmountable tax obstacle," the record discloses that appellant's English solicitors advised appellant's counsel that the procedure was entirely proper and that the tax contentions were "unfounded . . . [and] do not . . . form a satisfactory ground for seeking to obtain a variation of the Order of the Philadelphia Court on the grounds that it was unreasonable."

These facts, which are really no more than the highlights of appellant's continuing course of defiance, disclose that there was little that the court below could do other than to issue its contempt order. There certainly can be no doubt that the order was completely within the court's discretion.

We find that appellant's claims that the court below followed improper procedures in the issuance of its contempt order are wholly without merit. It could not be clearer, considering the continuing litigation and the correspondence between appellant's counsel and both appellee's counsel and appellant's own English solicitors, that appellant was aware of the steps which he was required to take. It is hard to treat seriously appellant's claim that he did not have adequate time to prepare for the June 20, 1967 hearing, considering that it was imperative (because of the summer closing of the English courts) to hold the hearing immediately and especially since appellant's counsel had the date *advanced* by several days. Appellant's other contentions—for example, that he was entitled to a jury trial in a *civil* contempt proceeding, or the suggestion that the fine here was constitutionally excessive or consti-

tuted cruel and unusual punishment—are equally unmeritorious.

Finally, it should be noted that the fines were properly conditioned by the court below on appellant's ultimate compliance, which will enable appellant to apply for remission. In light of this, the amount of the fines is in reality indefinite and we cannot determine at this juncture whether the amount is proper.

The orders of the Court of Common Pleas of Philadelphia County are affirmed and the case is remanded for proceedings consistent with the views expressed in this opinion and the opinion of the court below.

Costs on appellant.

Mr. Justice COHEN dissents.

Mr. Justice JONES did not participate in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the Majority that there was a violation of the Decree of the lower Court, and that appellant was guilty of indirect civil contempt. However, appellant's actions were sincere and his contempt was unintentional, although his actions were unwise. For these reasons, the penalty or fines totaling $250,000 for this unintentional contempt were too severe, even though they were conditioned: "In the event of defendant's ultimate compliance with the decree he may apply for remission of the fines imposed against him *subject to plaintiff's right of damages including all expenses and attorney's fees.*"*

I would, therefore, affirm the Order of contempt and remand the case, with direction to the lower Court to modify its contempt Order to provide: "In the event of defendant's prompt compliance with the Decree, he

---

* Italics, ours.

may apply for remission of the fines imposed against him, subject to plaintiff's right to damages, including all expenses and attorney's fees, not, however, to exceed the sum of Fifty Thousand Dollars ($50,000)."

Mr. Justice EAGEN joins in this concurring Opinion.