330 A.2d 530
**In re ESTATE of Alfred DOWNING, an Incompetent.**

**Appeal of COMMONWEALTH OF PENNSYLVANIA.**

Supreme Court of Pennsylvania.
Argued Oct. 3, 1974.
Decided Dec. 5, 1974.
Rehearing Denied Jan. 7, 1975.

538

Israel Packel, Atty. Gen., Donetta W. Ambrose, Asst. Atty. Gen., John M. Duff, Pittsburgh, for appellant.

Christ C. Walthour, Jr., Kunkle, Walthour & Garland, Greensburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

For more than 20 years, the Commonwealth has, pursuant to a 1954 court order, defrayed the costs of care of

Alfred Downing, an incompetent committed to Farview State Hospital. The Commonwealth seeks to recover from the incompetent's estate the cost of his maintenance since his commitment. The orphans' court of Westmoreland County denied the Commonwealth's claim. The Commonwealth appealed.[1] We hold that the Commonwealth is bound by the unappealed and unmodified 1954 order and may not recover its expenditures from the estate. We affirm.

In April, 1954, Downing was arrested and charged with the murder of his wife. The Commonwealth did not prosecute him for the crime. Instead, upon the petition of the warden supervising Downing's incarceration pending trial, the Court of Quarter Sessions appointed two doctors who examined Downing and found him to be psychotic with criminal tendencies. They recommended that Downing be committed to Farview State Hospital. The court adopted this recommendation and on June 3, 1954, committed Downing pursuant to the Mental Health Act of 1951.[2] The commitment order provided inter alia:

> "Now, June 3, 1954, it is ordered and directed that Alfred Downing be committed to the Farview State Hospital to be there detained and treated as an insane person at the expense of the Commonwealth of Pennsylvania until further order of the Court; and this shall be sufficient warrant for said commitment."

In a subsequent order the court appointed a guardian for the incompetent's estate.

In 1965, the Commonwealth filed a petition in the court of common pleas asserting that the estate was indebted to the Commonwealth for the cost of the incompe-

---

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. 211.202(3) (Supp.1974).

2. Mental Health Act of 1951, Act of June 12, 1951, P.L. 533, § 101 et seq., repealed by Mental Health and Retardation Act of 1966, Act of October 20, 1966, P.L. 96, § 701, 50 P.S. § 4701 (1969).

tent's care since his commitment. The court transferred the claim to the orphans' court. There the case languished until 1972, when the guardian filed a first and partial account. The court in its adjudication denied the Commonwealth's claim.

The Mental Health Act of 1951, pursuant to which Downing was committed, provided that the committing court should determine at the time of commitment who was to bear the cost of the incompetent's care.[3] The statute thereby relieved the incompetent's family and the guardian of his estate of the uncertainty as to liability for the incompetent's maintenance.

The committing court was first to consider whether the means of the incompetent and of his family were sufficient to pay the maintenance of the incompetent in the institution.[4] The court was then to decide whether the incompetent's estate, his family, or the Commonwealth should bear the expense of his care and to frame an appropriate order for maintenance.[5] Such an order was to have the effect of a judgment.[6] If the court ordered the Commonwealth to maintain the patient and the Department of Revenue subsequently discovered that the estate of the incompetent or his family were financially capable of paying for the incompetent's care, the Act provided a procedure by which the Commonwealth could petition the court for a modification of its order.[7]

In this case, the Commonwealth did not seek revision of the cost of maintenance provision of the commitment order. Nevertheless, it contends that the estate of the incompetent is liable for the cost of his care since commitment. The Commonwealth argues that at common

3.  Id. §§ 701–706.
4.  Id. § 703(c).
5.  Id. § 703(a).
6.  Id. § 703(e).
7.  Id. § 705. See also id. § 703(d).

law and in all mental health acts the estate of the incompetent is primarily liable for the incompetent's maintenance. The Commonwealth further argues that no act of the Legislature has ever relieved the estate of this responsibility. It therefore concludes that the committing court's order on cost of maintenance could not in any way release the estate from its liability.

■■ Were the Commonwealth's theory to prevail, it would in effect permit the Commonwealth to relitigate a 20-year old order. The Commonwealth failed to follow the statutory procedure for modification of the original order. If the Commonwealth believes that the order improperly disposed of the issue of Downing's maintenance, its remedy is to seek a modification of the order. Until it obtains such a modification, the mandate of the court must be obeyed. The Commonwealth is thus precluded from recovering the cost of the incompetent's maintenance incurred in compliance with that order. See *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 453 Pa. 43, 308 A.2d 98 (1973). Any other result would deny the committing court's order the finality mandated by the Act. Although the Act of 1951 has since been repealed, the validity of orders issued under that Act was in no sense undermined by the repeal.

The Commonwealth argues it was not a party to the commitment proceeding and, therefore, is not bound by the court's direction to pay maintenance. In the circumstances of this case, we cannot agree.

■■ The person petitioning the court for the commitment of another pursuant to the Act of 1951 must be viewed as a party to the commitment proceeding.[8] In this case, the warden of the county jail, acting as custodian of the prisoner and performing a state function

8. See id. §§ 311(b), 328 & 342.

submitted the petition, and was therefore a party in his official capacity. He represented the Commonwealth. Moreover, the Commonwealth in compliance with the order of court, received, housed and maintained the incompetent in a state facility. Therefore, the Commonwealth is plainly bound by the court's determination that the means of the incompetent were insufficient to support his care and that the Commonwealth must bear the cost. Restatement of Judgments § 85, comment a at 403 (1942). See *Consumer Party v. Tucker*, 364 F.Supp. 594 (E.D.Pa.1973).

■ We find no more convincing the Commonwealth's argument that it had no notice of the proceeding. At the time of his commitment to the hospital, the Commonwealth was preparing to prosecute Downing for murder. The commitment was pursuant to the petition of the official charged with Downing's custody pending trial. His commitment to Farview is part of the custody pending disposition of the criminal charge. On this record, any argument that the Commonwealth was without notice is meritless.

Decree affirmed. Costs on the Commonwealth.

EAGEN, J., filed a dissenting opinion in which POMEROY and MANDERINO, JJ., join.

EAGEN, Justice (dissenting).

I agree the committing court properly exercised its discretion initially in directing the Commonwealth to bear the expense of the incompetent's care. However, I cannot agree with the conclusion reached by the majority that the Commonwealth did not seek revision of the cost of maintenance provision of the commitment order.

The Mental Health Act of 1951 clearly provided a means by which the maintenance order could be revised

or modified.* The record reveals the Commonwealth in 1965 did petition the Court of Quarter Sessions of Westmoreland County for a "Rule to Show Cause Why the Guardian of Alfred Downing, Pittsburgh National Bank, Should Not File an Account and Settle and Pay to the Extent Possible, the claim of the Commonwealth of Pennsylvania. . . ." This petition was transferred to the Westmoreland County Orphans' Court and no further proceedings were had until 1972 when the guardian did file an accounting and an audit of the estate was held. Nevertheless, I view the means by which the Commonwealth sought review of the commitment order as tantamount to a petition for revision of that order and, therefore, sufficient to preserve its rights therein.

The 1965 petition sought an accounting by the guardian of the assets contained within the incompetent's estate in order to determine whether the incompetent's estate was financially capable of defraying the expense of his care. This request for an accounting was a necessary part of the Department of Revenue's investigation authorized by Section 705. In the event the accounting did demonstrate an ability on the part of the estate to bear any portion of the incompetent's expenses, the Commonwealth also sought settlement of its claim. In effect

---

* The Mental Health Act of 1951, Act of June 12, 1951, P.L. 533, § 705, provided:

"Section 705. Investigation of Financial Status of Patient.— Whenever any person is maintained as a patient in any institution wholly or in part at the expense of the Commonwealth, the Department of Revenue may investigate the financial ability of the patient or of the person liable for his support to defray the expenses of his care in whole or in part. If, upon investigation by the Department of Revenue, it appears that the patient's estate or the financial ability of the persons liable for his support are such that the full cost of his care or a part thereof can be paid, the Department of Revenue shall require the payment of same if the patient was admitted upon voluntary application, or, if the patient was committed by order of court, the Department of Revenue, through the Department of Justice, shall ask the court to revise its order so as to provide for the payment of the care in full or in part, as the case may be."

the Commonwealth was seeking to have the order revised, since this settlement would operate as a modification to the existing order. To deny that the true intent of the Commonwealth was to remove or reduce the obligation imposed upon it by the 1954 court order is, in my view, unwarranted.

Hence, I would remand the record to the court below for further proceedings consistent with the position stated in this opinion.

POMEROY and MANDERINO, JJ., join in this dissenting opinion.