451 A.2d 751

**George E. EWING, Appellant,**

v.

**OLIVER REALTY, INC., and PBP Liquidating Trust and Equitable Life Assurance Society of the United States.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Oct. 15, 1982.

488

George E. Ewing, Pittsburgh, pro se.

Frederick N. Egler, Jr., Pittsburgh, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

PRICE, Judge:

This appeal arises out of an action in Equity which plaintiff-appellant, George E. Ewing, motivated by a complaint and Petition for Special Injunction on February 2, 1979. The action eventually resulted into an adjudication of contempt and a judgment against Mr. Ewing, from which he appeals.

The facts are as follows: The appellant, George Ewing, is an attorney admitted to the bar of the Supreme Court of Pennsylvania and of Allegheny County. Mr. Ewing leased office space at the Equibank Building, Two Oliver Plaza, Pittsburgh from Oliver Realty, the appellees in this action. After Mr. Ewing had fallen behind in his rent, he filed a complaint and a request for an injunction in order to prevent appellees from evicting him or disturbing his posses-

sion. On the same day that the complaint was filed, February 2, 1979, the court (per Watson, J.) set a hearing on plaintiff's petition for February 8, 1979, and temporarily granted the relief sought by Mr. Ewing without prior notice or hearing pending a final judicial order. (R. 15b).

On February 8, 1979, the parties entered into a consent order which was signed by the Honorable Ralph H. Smith, Jr. (R. 16b). The order provided that the February 2, 1979 order restraining appellees from evicting Mr. Ewing was to remain in full force and effect through March 31, 1979, on the condition that Mr. Ewing pay $1,400.00 to appellee Oliver Realty, Inc. by February 12, 1979 and pay an additional $5,639.28 to appellee by March 31, 1979.

Mr. Ewing did issue a check for $1,400.00 during the week of February 12, 1979 but the check was returned by the bank for insufficient funds. Mr. Ewing told Albert Schwacke, an employee of Oliver Realty, that he was aware that the check had been returned due to insufficient funds. (R. 89b–91b). Although there was no evidence offered of any threatened lockout, Mr. Ewing presented another Petition for Special Injunction seeking to extend the injunction already in effect against defendants. (R. 17b). The court, by order of the same day, decreed that the two previous orders of February 2, 1979 and February 8, 1979, were to remain in full force and effect and that Mr. Ewing pay $5,639.28 to appellees by March 31, 1979. A hearing was set for April 5, 1979, in which the permanence of the order would be resolved. Mr. Ewing sent a check for $5,639.28 to appellees but again the check was returned due to insufficient funds.

Appellees decided to take action at this point, and on April 5, 1979, they petitioned the court to issue a rule to show cause why an attachment for contempt of court should not issue against the plaintiff. (R. 28b). Although Mr. Ewing had been served with a subpoena on April 3, 1979 requiring him to attend the hearing, he failed to do so. The court, upon being informed that plaintiff had not made the payments specified by its March 30 order, vacated the order at

appellees request, since the order also restrained them from evicting Mr. Ewing. The rule was issued that same day and made returnable on April 10, 1979, at 9:30 a.m. (R. 36b). The rule was served to Mr. Ewing's office by hand delivery on April 5, 1979.

On April 6, 1979, Mr. Ewing was personally served with a subpoena for the April 10 hearing directing him to appear in court. Mr. Ewing also ignored this subpoena, but he did file an answer on April 9, 1979. (R. 53b–54b). After failing in all attempts to contact Mr. Ewing, the court ordered a bench warrant to issue for the arrest of Mr. Ewing. (R. 43b).

Mr. Ewing telephoned the court on Friday, April 13 after efforts had been made to locate him. The court agreed to restrain the sheriff from arresting Mr. Ewing over the weekend on the condition that he appear at a contempt hearing on Monday, April 16, 1979. (R. 47b).

Mr. Ewing was in court on April 16 and after a brief hearing, the court found Mr. Ewing to be in contempt of court for his failure to comply with the subpoena order of March 30, 1979. It was ordered that Mr. Ewing could purge himself of the contempt if he would vacate his offices in appellees' building within one week. (R. 134b).[1] The court also found Mr. Ewing in contempt for his failure to comply with the April 6 subpoena and fined him $500 plus the costs of attachment. (R. 134–135b). The order of March 30 was subsequently reduced to judgment which was entered against Mr. Ewing for $7,039.28. (R. 44b).

A notice of appeal was filed to this court on April 16, 1979 by Mr. Ewing. His application for a supersedeas of the order of April 16 was denied by this court (per Cercone, J.) on April 20, 1979. Mr. Ewing filed exceptions to the April 16 order which were denied on June 26, 1979.

1. Mr. Ewing did not move out of the offices within a week and another hearing was held on April 25 in which Mr. Ewing finally agreed to vacate the premises after the appellees agreed to provide movers. At no time has Mr. Ewing paid any of the back rent.

The case involves various issues[2] that can best be divided into two central questions. The first is whether there was a proper finding of contempt and the second is whether Judge Smith's decision to order Mr. Ewing to vacate and to pay back rent was a proper exercise of judicial discretion.

■ Both at the April 16 hearing and in his brief, Mr. Ewing has argued extensively that he could not be held in contempt of the March 30 order. In a civil[3] contempt proceeding there is a five step process which must be followed. *Crislip v. Harshman,* 243 Pa. Superior Ct. 349, 365 A.2d 1260 (1976).[4] The steps are as follows: (1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute (arrest), (4) a hearing on the contempt citation, and (5) an adjudication of contempt. *Id.* 243 Pa. Superior Ct. at 352, 365 A.2d at 1261. Judge Smith followed the procedure scrupulously in this case

**2.** Appellant raised four issues in his briefs but we do not agree with his classification as there are only two substantial issues in this factually complicated case. Moreover, Mr. Ewing's briefs are not very helpful since he has failed to meet even the minimal requirements of Chapter 21 of the Rules of Appellate Procedure. Among other things, Mr. Ewing has failed to include: a statement of jurisdiction (Pa.R.A.P. § 2114); a summary of argument of the case that is a *balanced presentation* of the history of the proceedings and avoids argument, (Pa.R.A.P. § 2117(b) (emphasis added)); references to the record or a reproduced record or a designation thereto (Pa.R.A.P. § 2117(a)(4) and § 2154). Mr. Ewing's reply brief is of more aid since exhibits are included, but still falls short of remedying the defects in the original. Although we have the option of suppressing the brief or quashing Mr. Ewing's appeal due to these inadequacies under Rule 2101, we have not chosen to do so this time.

**3.** Since the citation in this case was for the purpose of coercing Mr. Ewing into complying with the previous court orders to the benefit of the appellees, the contempt is civil in nature and not criminal. See *In Re B.,* 482 Pa. 471, 476, 394 A.2d 419, 421 (1978); *Commonwealth v. Charlett,* 481 Pa. 22, 391 A.2d 1296 (1978); *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); *Cahalin v. Goodman,* 280 Pa.Superior Ct. 228, 421 A.2d 696 (1980).

**4.** See also *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969); *Kramer v. Kelley,* 265 Pa.Superior Ct. 58, 401 A.2d 799 (1979).

as evidenced from the record.[5]   (R. 28b, 35b, 36b, 40b, 43b, 45b–168b).

Mr. Ewing's central attack on the contempt ruling is based on the fact that the March 30 order had been vacated at the time of the April 16 hearing by Judge Smith.   It is ironic that Mr. Ewing would seek refuge in the fact that the order was vacated on April 5 when he had already failed to comply with its terms by not appearing at the April 5 hearing or paying the money due.   There was no justification offered for his failure to show on April 5 or April 10 other than the fact that he thought appellees were on a "fishing expedition." [6]   Judge Smith vacated the order only after *appellees* came into court and sought an attachment for contempt.   From the situation (and the stated intention of Judge Smith on the record), it is apparent that Judge Smith was not relieving Mr. Ewing of any obligations, but rather was relieving appellees of their continuing duty to adhere to the injunction against them, when Mr. Ewing had consistently failed to keep up his end of the bargain.[7]   (R. 134b).   It is hard to imagine how Mr. Ewing could realistically believe that the order had been vacated in part for his benefit when he had done nothing to deserve any relief from the court, and in fact had done the opposite by drafting checks when he had no funds from which the checks could properly be paid.

**5.**   Mr. Ewing argues that the petition should have been personally served but there is no merit to this contention when there is already jurisdiction over the parties.   Mr. Ewing had been personally served with the subpoena, and the order, rule, and petition had been served by hand delivery.   (R. 38b–39b).   See *Messmore's Estate*, 293 Pa. 63, 141 A. 124 (1928); *Commonwealth v. Fladger,* 250 Pa.Superior Ct. 36, 378 A.2d 440 (1977).

**6.**   Mr. Ewing knew that he owed at least some money to the appellees so it is hard to believe that he could realistically have thought they were merely fishing.

**7.**   Mr. Ewing's repeated claim that the matter is moot is ludicrous. Mr. Ewing, as an officer of the court, should know better than to expect that his obligations would suddenly disappear.   The obligation to pay rent was still very much an issue, and any hope of mootness is at best, wishful thinking.

■ Even if Mr. Ewing genuinely believed that the order was invalid, he was still obligated to comply with the subpoena issued under the order and to attend the hearing. Mr. Ewing chose to ignore the April 5 hearing where he would have had an opportunity to present his position. The law is clear that an order validly issued by a court must be obeyed until declared invalid in the regular course, and as an attorney, Mr. Ewing certainly should have been aware that subpoenas must be obeyed.

The Supreme Court of Pennsylvania stated in the case of *Philadelphia Marine Trade Association v. International Longshoremen* that:

> [E]ven though the preliminary injunction was invalid, that does not determine the legality of the contempt citations. It is well settled that: "... an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. Mine Workers,* 330 U.S. 258, 293 [67 S.Ct. 677, 696, 91 L.Ed. 884] (1947).

453 Pa. 43; 49–50, 308 A.2d 98, 102 (1978). *See also, In Re Estate of Downing,* 459 Pa. 537, 330 A.2d 530 (1974); *Horne Co. v. Int. U. of Op. Eng. Etc.,* 250 Pa. Superior Ct. 145, 378 A.2d 868 (1977).

■ The Pennsylvania Supreme Court has also stated that "the interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses obedience, does so at his peril." *Philadelphia Marine Trade Association v. International Longshoremen's Association,* 392 Pa. 500, 524–25, 140 A.2d 814, 826–27 (1958) (concurring opinion of Bell, J.). Also see *Bata v. Central Penn National Bank,* 433 Pa. 284, 287, 249 A.2d 767, 768 (1969). In the present case, the court still had jurisdiction over the parties and the subject matter. Mr. Ewing did not bother to appear at the April 5 or the April 10 hearing, and by this behavior, he has shown indifference for the dignity and respect of the

court.[8]  We hold that Mr. Ewing was properly held to be in civil contempt for his failure to comply with the subpoena which was issued due to his failure to comply with the March 30 order demanding that he pay back rent and appear in court April 5.[9]  Therefore, Mr. Ewing's first allegation of error is denied.

■ The next allegation of error concerns the sanctions imposed by Judge Smith and the judgment entered against Mr. Ewing.  Judge Smith, after finding Mr. Ewing in con-

8.  As for Mr. Ewing's allegation that there is no longer any court order in existence which he could violate, we answer simply by pointing out that he had already completely violated the terms of the order before the order was vacated.  The subpoena was issued after the order had been violated and the order was vacated only to prevent him from obtaining its benefits.

9.  Mr. Ewing argues that the hearing itself was unfair for three reasons: (1) he was denied of the right to counsel;  (2) he was entrapped into attending the hearing and then was falsely imprisoned during the hearing;  (3) he should have been granted a continuance. Because we find no merit to any of these arguments, we will deal with them briefly.

(1).  Mr. Ewing did not bring an attorney with him to the hearing and did not at any time, ask Judge Smith if he could consult with counsel.  As an officer of the court, he was certainly aware of his rights and any counsel right he had was waived by his silence.

(2) Quite simply, Mr. Ewing was never falsely imprisoned and this consistent allegation in his briefs is rather tiresome.  Mr. Ewing claims that since he said he was ill he should have been allowed to leave.  However, the judge asked him if he wanted a doctor or to be excused and Mr. Ewing declined on both counts.

Nor was Mr. Ewing entrapped into attending the hearing.  Judge Smith agreed to restrain the sheriff from arresting Mr. Ewing over the Easter weekend in return for his promise to appear in court on Monday.  Judge Smith had no obligation to do this and was merely being courteous.  To classify this as entrapment is an exercise in creative thinking that has no bearing.

(3) Judge Smith was willing to consider a continuance on the basis that Mr. Ewing might call in witnesses, but the record shows that Mr. Ewing thought that it was more important that he get back to work and thus decided that he would rest his case.  (R. 115b–120b).  Mr. Ewing was not forced to rest as he claims but rather made a conscious decision and while he may regret his hasty action, there is no valid basis for arguing that a continuance should have been granted.  Also, by this time, Mr. Ewing had already ignored two subpoenas and failed to comply with the March 30 order.  Mr. Ewing would not specify any defenses which he could raise even if given more time.

tempt, ordered that he pay a fine of $500 for ignoring the subpoena and that he vacate the premises in one week if he desired to purge himself of the contempt. Judgment was also entered for the back rent that Mr. Ewing owed appellees. Mr. Ewing claims that if he was to be "evicted", the procedures under the Landlord and Tenant Act would have had to be followed.

Mr. Ewing had sought equity in the courts from the beginning with his two requests for injunctions. Yet Mr. Ewing has continually failed to do equity himself by willfully disobeying court orders and flouting the court's authority by ignoring subpoenas. Judge Smith did not summarily evict Mr. Ewing as prohibited by the Landlord and Tenant Act; rather Mr. Ewing was given one chance after another to present his case and to remain in his offices despite his failure to pay rent.[10] To hold that Judge Smith was powerless to prevent the continuing unfairness to appellees would be to strip his court of the equity power to enforce its own orders and to render justice.

It has long been settled that courts of equity have the power to enforce their own orders.[11] Mr. Ewing's position is similar to that of the plaintiff in *Winton's Appeal,* 97 Pa. 385, (1881) where the court stated:

> The position of the plaintiff is this: Having obtained a decree in his favor by which the deed was declared a mortgage, upon the offer to pay promptly and in cash the

10. Typical of Mr. Ewing's attitude is the following excerpt from the April 25, 1979 hearing concerning the fact that he had failed to move out or pay back rent after the contempt had been adjudicated. While Judge Smith is attempting to find out why Mr. Ewing has not left the premises, or paid the rent, Mr. Ewing states:

> As I understand it, even if I paid it, it doesn't make any difference; they still want me out today. So why should I?
> THE COURT: Why should you what?
> MR. EWING: Why should I pay and get kicked out?

(R. 157b; See also 158b–162b).

11. Mr. Ewing also argues that the Act of July 12, 1842, P.L. 339, 12 P.S. § 257 bars imposition of contempt sanctions. He did not make this argument in the lower court and is therefore barred from making it here (Pa.R.A.P. 302(a)) although it would not be of any help to him even if considered.

amount due thereon, he now declines to pay the money, and denies the power of the court to compel him to do so. He seems to be under the impression that the cause has reached a point where the court has lost its power, that the proceedings are at a deadlock, and that the only remedy left the defendant is to go into a court of law with his scire facias upon the mortgage, a writ of ejectment or action of convenant. In the meantime the land, which is chiefly valuable for its coal, is being constantly depreciated by the working of its mines.

The plaintiff has mistaken the powers of a court of equity. It is not so helpless as he imagines. When once it has a case within its grasp it has all the authority necessary to a full disposition of all the questions arising therein. In doing so it has no occasion to call to its aid the assistance of a court of law. Its remedies are plastic, and may be molded to meet the exigencies of the case. The plaintiff, having invoked this jurisdiction and obtained the relief he sought, cannot now turn the defendant over to a court of law to obtain the redress to which he is entitled upon the plaintiff's own showing. The tribunal to which the latter has appealed will hold him and his property within its grasp until he does that equity which he solemnly promised to perform.

97 Pa. at 394–395. *See also, Commonwealth ex rel. Beghian v. Beghian,* 408 Pa. 408, 184 A.2d 270 (1962); *Philadelphia Marine Trade Association v. International Longshoreman,* 392 Pa. 500, 140 A.2d 814 (1958); *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956). Thus in this case, it was certainly proper for the judge to order that the premises be vacated due to Mr. Ewing's failure to comply with the back rent orders.

■ The court was also justified in imposing the $500 fine under powers granted by 42 Pa.C.S.A. § 4131. Mr. Ewing's conduct had consistently evidenced disrespect for the court and required immediate vindication. Mr. Ewing, as an officer of the court, was guilty of official misconduct by ignoring the subpoena and Judge Smith had the discre-

tion to impose such a sanction and the $500 fine was justified. *See, Commonwealth v. Stevenson,* 482 Pa. 76, 393 A.2d 386 (1978); *Commonwealth v. Strickler,* 481 Pa. 579, 393 A.2d 313 (1978); *Bata v. Central Penn National Bank,* 433 Pa. 284, 249 A.2d 767 (1969).

Because we find that Mr. Ewing was properly held in contempt and that the sanctions were proper, the judgment entered against Mr. Ewing for back rent was also proper. Therefore, Mr. Ewing's allegations of error are dismissed and the order of the court of April 16, 1979 is affirmed, with costs taxed to appellant.