600 A.2d 207

**JACK REES NURSING AND REHABILITATION SERVICES, a Corporation, Appellee,**

**v.**

**Richard G. HERSPERGER, individually and t/d/b/a/ H.S.S. Vending Distributors, Appellants.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 1991.

Filed Dec. 11, 1991.

John J. Kubanda, Coraopolis, for appellants.

James W. Manolis, New Castle, for appellee.

Before WIEAND, KELLY and POPOVICH, JJ.

WIEAND, Judge:

This is an appeal from an order holding the appellant, Richard G. Hersperger, t/d/b/a H.S.S. Vending Distributors, in civil contempt for failing to comply with two consent decrees and requiring him to pay monetary damages to the injured party in order to purge the contempt. After careful review, we affirm.

In May, 1985, the Jack Rees Nursing and Rehabilitation Services (Rees) agreed to lease, for thirty-six (36) months at a rental of $628.78 per month, certain vending machines from Hersperger. It was agreed by the parties that Hersperger would sell to Rees the products for the vending machines. The lease agreement further provided that "if machine sales do not make lease payment H.S.S. Vending [Hersperger] will make the balance with product credit."

On September 12, 1986, Rees filed a complaint in equity to obtain Hersperger's specific performance of the contractual obligation to provide product credit for the difference between monthly lease payments and gross profits from sales. Before the matter came to trial, the parties reached an agreement which was entered as a consent decree on February 17, 1987. This decree provided, in pertinent part, as follows:

1. Richard S. Hersperger, individually and trading and doing business as H.S.S. Vending Distributors (herein-

after "Defendants", shall reimburse Jack Rees Nursing and Rehabilitation Services (hereinafter "Plaintiff), as hereinafter set forth for the total amount by which Plaintiff's lease payments have exceeded its gross profits from the vending machines in question for the period from May, 1985 to February, 1987. This amount shall be computed as the total of: (a) *$4,539.99*, representing the difference between lease payments and gross profits for the period of May, 1985 through January 20, 1987; and (b) the difference between the February, 1987 lease payment and the gross profits from January 21, 1987 through February 20, 1987. ....

2. The aforesaid reimbursement shall not be made in cash, but rather shall be made in the form of *"product credit"* as follows: (a) during the last week of each accounting period (which shall run from the 21st day of one month to the 20th day of the next successive month or otherwise, as the parties may from time to time agree, in writing,) the Plaintiff shall requisition from the defendants the products which it intends to vend through the leased vending machines. Defendants shall, in turn, supply such products to Plaintiff at no charge to Plaintiff. Within seven (7) days of the conclusion of each accounting period, Plaintiff shall furnish to Defendants, on forms supplied and/or approved by Defendants, an accounting of the total sales, based on the retail sales price of the items sold, of all items vended by said leased vending machines, as well as a statement of the lease payment made for said month. In the event the total sales exceeds the lease payment amount for that accounting period, the difference between the two figures shall be applied as a credit reducing the total amount due as computed in Paragraph 1, above. *In the event the lease payment exceeds the total sales for that accounting period, the difference shall be treated as a debit amount, increasing the total amount due as computed in Paragraph 1, above.* (Emphasis added)

In July, 1987, Rees filed a petition to hold Hersperger in contempt for failing to supply products free of charge as directed by the court's decree. This was again resolved by the entry of a second consent decree on August 21, 1987. Therein Hersperger agreed to

1. *immediately supply goods* to the Plaintiff in a manner and an amount deemed appropriate by Plaintiffs (sic), to be used in the vending machines as required by the Consent Decree;

2. provide Plaintiff with *order forms* for the purpose of ordering products from Defendant; a *list of products* available to Plaintiff from Defendant for purposes of filling vending machines and the *retail prices* that should be charged for the same;

3. to pay the Plaintiff damages in the sum of *$250* per proceeding, in addition to any other remedy ordered by the Court in the event the Plaintiff initiates contempt proceedings against the Defendant in the future and Defendant is found by the Court to have been in contempt of the Court Order;

4. in recognition of the fact that institution of the aforementioned contempt proceedings has resulted in legal fees and costs incurred by the Plaintiff, Defendant agrees to provide Plaintiff with an additional *$400* credit toward the purchase of vending machine products in addition to any amounts set forth in the above recited Decree;

5. to perform its obligations in any and all other respects as set forth in the Consent Decree dated February 17, 1987; (Emphasis Added)

On August 25, 1988, Rees once again petitioned the court to hold Hersperger in contempt. Following hearings on November 30, 1988, May 9 and May 19, 1988, the court found Hersperger in contempt for failing to provide vending products in compliance with its decree. On June 19, 1989, the court ordered Hersperger to pay to Rees the sum of $9,994.09 to purge the contempt. In response to Hersperger's post-trial motions, the court concluded that it had

erred in computing the amount owed to Rees and, on September 19, 1990, entered a modified order reducing the amount to $5,454.10. However, on September 18, 1990, in response to Rees' motion for reconsideration, the trial court again modified its order to reinstate the amount payable as originally determined, i.e., $9,994.09.[1] Hersperger appealed from the court's order of September 18, 1990. He contends that it was error to order the payment of a monetary sum to enforce the consent decree which had limited reimbursement to product credits.

The general rule is that "each court is the exclusive judge of contempt against its process, and on appeal its action will be reversed only when a plain abuse of discretion occurs." *Fatemi v. Fatemi*, 371 Pa.Super. 101, 113, 537 A.2d 840, 846 (1988), citing *Neshaminy Water Resources Auth. v. Del-Aware Unlimited, Inc.*, 332 Pa.Super. 461, 469, 481 A.2d 879, 883 (1984). In *Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336 (1968), *cert. denied*, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969), the Pennsylvania Supreme Court stated:

> The Courts have always possessed the inherent power to enforce their Orders and Decrees by imposing penalties and sanctions for failure to obey or comply therewith. *Commonwealth ex rel. Beghian v. Beghian*, 408 Pa. 408, 184 A.2d 270; *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669; *Michaelson v. United States*, 266 U.S. 42 [45 S.Ct. 18, 69 L.Ed. 162]; *Green v. United States*, 356 U.S. 165 [78 S.Ct. 632, 2 L.Ed.2d 672]; *United States v. United Mine Workers of America*, 330 U.S. 258 [67 S.Ct. 677, 91 L.Ed. 884]; *Commonwealth ex rel. v. Perkins*, 124 Pa. 36, 16 Atl. 525; *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania*, 114 Pa.Superior Ct. 7, 174 Atl. 11; *Commonwealth v. Sheasley*, 102 Pa.Superior Ct. 384, 157 Atl. 27.... [I]t is clear that a Court can for present or past acts of misbehaviour amounting to civil

1. This amount reflects the sum of $4,539.99 due under the first consent decree plus $4,804.10 due for the period of February, 1987 to April, 1988, plus an additional $650.00 pursuant to paragraphs 3 and 4 of the second consent decree.

contempt impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to the county or to the individual who was injured. *United States v. United Mine Workers of America*, 330 U.S. [258, 67 S.Ct. 677] supra; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 [69 S.Ct. 497, 93 L.Ed. 599]; *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 [31 S.Ct. 492, 55 L.Ed. 797]; *Commonwealth ex rel. Beghian v. Beghian*, 408 Pa. [408, 184 A.2d 270] supra; *Parker v. United States*, 126 F.2d 370.

In *Parker v. United States*, the Court said (page 380): "It is well settled, however, that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender. *Gompers v. Buck's Stove & Range Co.*, 1911, 221 U.S. 418, 448, 449, 31 S.Ct. 492 [500, 501] 55 L.Ed. 797, 34 L.R.A., N.S., 874; *Lamb v. Cramer*, 1932, 285 U.S. 217, 220, 221, 52 S.Ct. 315 [316] 76 L.Ed. 715; *Merchants' Stock & Grain Co. v. Board of Trade*, 8 Cir., 1912, 201 F. 20, 30; *Delaware, L. & W. R. Co. v. Frank*, 2 Cir.1916, 230 F. 988; *American Graphophone Co. v. Walcutt*, C.C.S.D.N.Y. 1898, 86 F. 468; *Kreplik v. Couch Patents Co.*, 1 Cir., 1911, 190 F. 565, 569; *Raymor Ballroom Co. v. Buck*, 1 Cir.1940, 110 F.2d 207, 211; *Aerovox Corp. v. Concourse Electric Co.*, 2 Cir.1937, 90 F.2d 615, 617; *Lineker v. Dillon*, D.C.N.D. Cal.1921, 275 F. 460, 470, 476." ... Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. *Gompers v. Buck's Stove & Range Co.*, supra, at 448, 449 [31 S.Ct. at 500, 501]. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a

civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.

*Brocker v. Brocker, supra,* 429 Pa. at 519–521, 241 A.2d at 338–339. See also: *Ewing v. Oliver Realty, Inc.,* 305 Pa.Super. 486, 451 A.2d 751 (1982).

 "A consent decree, although negotiated by the parties, is a judicial act which is enforceable via the court's contempt power." *Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 411, 470 A.2d 981, 985 (1984), *overruled on other grounds, Sonder v. Sonder,* 378 Pa.Super. 474, 506, 549 A.2d 155, 171 (1988); *Usery v. Chef Italia,* 540 F.Supp. 587 (E.D.Pa.1982). See also: *Delaware Valley Citizens' Council v. Commw. of Pa.,* 533 F.Supp. 869 (E.D.Pa.1982), *aff'd,* 678 F.2d 470 (3d Cir.1982). See also: *Baran v. Baran,* 166 Pa.Super. 532, 536, 72 A.2d 623, 625 (1950). The measure of a court's power in civil contempt proceedings is determined according to the need for full remedial relief. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949). See also: 7A P.L.E. Contempt § 52, citing *Rouse Philadelphia Inc. v. Ad Hoc '78,* 274 Pa.Super. 54, 72, 417 A.2d 1248, 1258 (1979), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1988). In the instant case, when appellant was adjudged to be in civil contempt for failing to perform its obligations under the consent decree, the trial court had the power to impose sanctions in an amount which would afford appellee complete remedial relief.

The consent decree in this case had established a formula by which the court could accurately compute the monetary value of appellant's unfulfilled obligation. The trial court's computation was properly made on the basis of that formula. The court did not abuse its discretion by imposing civil contempt sanctions calculated to provide appellee with the cash value of appellant's unperformed obligations.

The order of the trial court is affirmed.