J-A27041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL LIPESKY AND LESLIE DELL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES MAHAN        Appellant | No. 706 EDA 2016 |

Appeal from the Order February 18, 2016
in the Court of Common Pleas of Northampton County Civil Division
at No(s): No. 2014-03210

| | |
|---|---|
| MICHAEL LIPESKY AND LESLIE DELL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES MAHAN        Appellant | No. 829 EDA 2016 |

Appeal from the Order February 18, 2016
in the Court of Common Pleas of Northampton County Civil Division
at No(s): No. 2014-03210

BEFORE: PANELLA, LAZARUS, FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:       **FILED OCTOBER 14, 2016**

Appellant/Cross-Appellee ("Appellant"), James Mahan, appeals *pro se* from the order entered on February 18, 2016, in the Northampton County Court of Common Pleas denying Appellant's petition for clarification and reconsideration of the court's January 29, 2016 order granting, in part,

---

[*] Former Justice specially assigned to the Superior Court.

Appellees/Cross-Appellants' ("Appellees"), Michael Lipesky and Leslie Dell, petition for contempt. Appellees filed a cross-appeal from the order entered on February 18, 2016, which failed to address Appellees' request for additional attorney's fees. We affirm.

We adopt the facts and procedural history set forth by the trial court's January 29, 2016 findings of fact and April 25, 2016 Pa.R.A.P. 1925(a) opinion. *See* Trial Ct. Op., 4/25/16, at 1-2, 8; Findings of Fact, 1/29/16, at 1-10.

On appeal, Appellant alleges various claims concerning the trial court, including that the court erred in its January 29, 2016 findings of fact and contempt order, and that the court erred by granting attorney's fees to Appellees.[1] *See* Appellant's brief at 2-10. On cross-appeal, Appellees argue they should be awarded additional attorney's fees incurred while responding to Appellant's *pro se* motion for clarification and reconsideration. Appellee's Brief at 9. No relief is due.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of

---

[1] Appellant's *pro se* brief fails to conform to the requirements of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2111(a), 2116(a), 2119. Nevertheless, we will address Appellant's issues as gleaned from the trial court's opinion. *See* Trial Ct. Op. at 2.

the trial judge when reviewing an order of contempt." ***Flannery v. Iberti***, 763 A.2d 927, 929 (Pa. Super. 2000) (citations omitted).

After careful consideration of the parties' briefs, the record, and the decision of the trial court, we affirm on the basis of the court's opinion. ***See*** Trial Ct. Op. at 2-9 (holding: **(Appeal)** Appellant's claims regarding the court's factual errors are without merit, as the court's January 29, 2016 findings of fact are based on competent evidence from the record; the court did not err by allowing testimony of the August 2015 paving installation during the October 13, 2015 contempt hearing because a conference was held on September 14, 2015, at which the parties discussed this paving installation; following the September 14, 2015 conference, the contempt hearing was continued until October 13, 2015, to allow the parties to prepare for argument on Appellees' contempt petition and whether the August 2015 paving installation complied with the parties' March 27, 2015 agreement concerning the easement; Appellant, therefore, cannot claim prejudice from the testimony regarding the August 2015 paving installation because, following the conference, Appellant had sufficient notice that the events subsequent to Appellees' filing of the contempt petition would be addressed at the contempt hearing; the court did not misinterpret the requirements of the March 27, 2015 agreement because Appellant's counsel stated immediately thereafter that Appellant would pave "that portion of the easement," which referred to the entire disturbed area of the easement;

Appellant has waived his claim regarding the award of attorney's fees to Appellees because Appellant did not object to the award before, during, or after the contempt hearing; the court was permitted to clarify its January 29, 2016 contempt order because it did so within thirty days and before Appellant filed his appeal; Appellant was aware of the court's potential to clarify the contempt order, as he had filed a motion for clarification and reconsideration, which was granted as to his request for clarification; **(Cross-Appeal)** Appellees' request for additional attorney's fees was not properly brought before the court because Appellees did not file a petition requesting additional attorney's fees, they did not file a counter-motion for reconsideration requesting such fees, and the court never entered or filed an order denying Appellees' request for additional fees from which Appellees could have filed their cross-appeal; Appellees improperly requested additional fees in their "new matter," which is not a substitute for a petition requesting such fees; and Appellees were not required to respond to Appellant's motion for clarification and reconsideration and incur additional legal fees). Accordingly, we affirm the court's February 18, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 10/14/2016



## IN THE COURT OF COMMON PLEAS OF
## NORTHAMPTON COUNTY, PENNSYLVANIA
## CIVIL ACTION

MICHAEL LIPESKY and LESLIE DELL, )
    Plaintiffs                 )        No. C-48-CV-2014-3210
                                     )
          v.                       )
                                     )
JAMES A. MAHAN,               )
    Defendant               )

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)
## STATEMENT

On March 1, 2016, Defendant, acting *pro se*, filed a Notice of Appeal to the Superior Court from this Court's Order of Court filed on February 18, 2016 ("Clarification Order"), which clarified this Court's Decision and Order of Court filed on January 29, 2016 ("Contempt Decision/Order"). Plaintiffs filed a cross-appeal from the Contempt Decision/Order on March 18, 2016. The Contempt Decision/Order held Defendant in civil contempt for violating an Order of Court entered, by agreement of the parties, on March 17, 2015, and filed on March 27, 2015 ("Agreed Order").[1] The Court will first address Defendant's appeal.

---

[1] Although Defendant's *pro se* Notice of Appeal only mentions the Clarification Order, his concise statement of errors complained of on appeal, which is discussed *infra*, demonstrates that Defendant intended to appeal both the Contempt Decision/Order and the Clarification Order.

1

## Defendant's Appeal

On March 3, 2016, this Court filed an Order of Court directing Defendant to file and serve the Court with a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)(1). On March 8, 2016, Defendant filed a "Statement of Errors" ("Defendant's Statement"), asserting that the Court erred in numerous ways. On March 14, 2016, Defendant filed a "Statement of Errors Amendment 1," which the Court will consider as a supplement to Defendant's Statement. The Court incorporates herein by reference the findings of fact contained in its Contempt Decision/Order filed on January 29, 2016, and specifies that the place in the record where the reasons in support of the orders appealed from can be found is the Contempt Decision/Order, as supplemented herein.

Regarding the Contempt Decision/Order, Defendant's asserted errors can be categorized as follows: 1) alleged factual errors; 2) an alleged procedural error in allowing an implied amendment to Plaintiffs' Petition for Contempt; 3) an alleged misinterpretation of the Agreed Order, Defendant's violation of which placed him in contempt; and 4) an alleged erroneous award of attorney's fees in favor of Plaintiffs.

Regarding the alleged factual errors, the Court notes that the findings of fact contained in its Contempt Decision/Order are based on competent evidence of record, as noted in the citations to the record following each

2

finding of fact. *See L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1092 (Pa. Super. 2001). Thus, Defendant's allegations of factual error are without merit.

Regarding the "implied amendment" to Plaintiffs' Petition for Contempt, the Court notes that, despite its reference to the same as such for identification purposes in the Contempt Decision/Order, Plaintiffs' Petition for Contempt was never formally amended. (*See* N.T., 10/13/2015, at 43:19-20.) Nevertheless, it was not error for the Court to allow testimony regarding the August 2015 paving installation, because the challenged subject matter constituted a permissible variance between the averments in Plaintiffs' Petition for Contempt and the evidence submitted at the contempt hearing. *See Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1291 (Pa. Super. 1997) (variance permissible in contempt proceedings when defendant given sufficient notice and there is no surprise or prejudice to defendant); *Reynolds v. Thomas Jefferson Univ. Hosp.*, 676 A.2d 1205, 1210 (Pa. Super. 1996) ("Pennsylvania courts have held that a variance is not material if the alleged discrepancy causes no prejudice to the adverse party.").

The contempt hearing was originally scheduled for September 14, 2015. On that date, the parties appeared for the hearing. However, rather than proceeding with the hearing, a conference was held during which numerous events that took place subsequent to the filing of Plaintiffs' Petition for Contempt, most notably the August 2015 paving installation,

3

were discussed. In light of the information discussed at the conference, the Court continued the hearing and specially scheduled it for October 13, 2015, which is not reflected on the docket sheet. This was done so that the parties could prepare for a hearing that would cover both the issues raised in Plaintiffs' Petition for Contempt as well as those issues discussed at the conference, again, most notably whether the August 2015 paving installation complied with the Agreed Order.[2] Therefore, Defendant was fully apprised that the events that took place after the filing of Plaintiffs' Petition for Contempt would be addressed at the contempt hearing. As the hearing took place nearly one month after the conference, Defendant had sufficient notice and cannot claim any prejudice or surprise as a result of the Court permitting the introduction of such evidence at the contempt hearing.

Defendant also asserts that the Court erred when it interpreted the Agreed Order to require Defendant to repave the entire area of pavement that he had excavated in November 2013 ("Disturbed Area"). Specifically, Defendant takes issue with the Court's use of the word "entire" several times in the Contempt Decision/Order. Defendant argues that the Court's statement in the Agreed Order that Defendant was "going to repave a *portion* of the disturbed area" indicates that Defendant did not agree to pave the entire Disturbed Area. (*See* N.T., 3/17/2015, at 6:5-6 (emphasis

---

[2] As it was clear to the Court and the parties that Plaintiffs would likely file a supplemental petition for contempt if the hearing did not address whether the August 2015 paving installation complied with the Agreed Order, the parties agreed, for the sake of judicial economy, to continue the hearing so that the parties could prepare to address this issue.

4

added).)  This is belied, however, by Defendant's counsel's statement immediately thereafter that Defendant "will pave . . . the disturbed area of asphalt or macadam." (*Id.* at 6:7-9.)  Defendant's counsel also stated in the Agreed Order that Defendant agreed "to pave that *portion* of the *easement*," referring to the *entire* Disturbed Area.  (*Id.* at 6:17-18 (emphases added).)  This added context makes clear that the *entire* Disturbed Area was the *portion of the easement* that Defendant's counsel was referring to, given that the easement in question constitutes an area far larger than merely the Disturbed Area excavated by Defendant in November 2013.  Defendant's counsel later stated that Defendant agreed "to pave that *portion*," meaning the entire Disturbed Area, which, again, is a *portion* of the entire easement. (*Id.* at 7:3-4 (emphasis added).)  For these reasons, the Court's interpretation of the requirements imposed upon Defendant by the Agreed Order was not in error.

Defendant also asserts that the Court erroneously awarded attorney's fees to Plaintiffs.  Defendant raised no argument against or objection to an award of attorney's fees before the hearing, during the hearing, or in his Brief submitted following the hearing.  On February 4, 2016, Defendant filed a "Petition in Support of Clarification and Reconsideration" of the undersigned's Contempt Decision/Order ("Motion for Reconsideration"), in which he first objected to the award of attorney's fees.  Issues first raised in a motion for reconsideration are beyond the jurisdiction of an appellate court

5

and are not subject to appellate review. *See Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011). Accordingly, Defendant has waived this issue.

Regarding the Clarification Order, Defendant asserts that the Court erroneously clarified its Contempt Decision/Order in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution. On February 8, 2016, and at Defendant's request, the Honorable Emil A. Giordano, sitting in Motions Court and unbeknownst to the undersigned, entered an Order of Court granting reconsideration of the undersigned's Contempt Decision/Order. On February 12, 2016, Plaintiffs filed an Answer and New Matter in response to Defendant's Motion for Reconsideration. The factual assertions pleaded in Plaintiffs' New Matter caused the Court to recognize that the requirements imposed upon Defendant by the Contempt Decision/Order did not, perhaps, completely and clearly reflect the Court's intent. Therefore, on February 18, 2016, the Court filed the Clarification Order, clarifying that the requirement imposed upon Defendant in the Contempt Decision/Order to "repave that portion of the pavement excavated in November 2013 in the same location that the pavement existed as of November 2013" included a requirement that Defendant "excavate any portion of the pavement installed on August 27, 2015, that is located on Plaintiffs' property, if any." (Order of Ct. Jan. 29, 2016; Order of Ct., Feb. 18, 2016.) "Except as otherwise provided or

6

prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505. The Court did not modify its Contempt Decision/Order, but merely clarified one aspect of it. However, even if the Court's clarification is deemed to have modified the Contempt Decision/Order, it did so within thirty days of the entry of the Contempt Decision/Order and prior to Defendant's filing of the instant appeal. Further, as Defendant sought and was granted reconsideration of the Contempt Decision/Order, he was necessarily on notice that the Contempt Decision/Order was subject to clarification and/or modification. Lastly, although Defendant's Motion for Reconsideration was initially granted, giving the Court the opportunity to reconsider its Contempt Decision/Order, ultimately, the Clarification Order constituted a denial of the relief requested in the Motion for Reconsideration. To the extent Defendant alleges that this was in error, the Court notes that an appellate court has no jurisdiction over a trial court's denial of a motion for reconsideration. *See T.W. v. D.A.*, 127 A.3d 826, 826 n.1 (Pa. Super. 2015); *Prince George Ctr., Inc. v. U.S. Gypsum Co.*, 704 A.2d 141, 145 (Pa. Super. 1997). For these reasons, Defendant's claim that the Court erroneously clarified the Contempt Decision/Order is without merit and is not subject to appellate review.

7

For all of the above reasons, the Court submits that Defendant is not entitled to appellate relief.

## Plaintiffs' Cross-Appeal

On March 22, 2016, this Court filed an Order of Court directing Plaintiffs to file and serve the Court with a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)(1). On April 11, 2016, Plaintiffs filed a "Concise Statement of Errors Complained of on Appeal" ("Plaintiffs' Statement"), asserting that the Court erred by failing to award them additional attorney's fees in entering the Clarification Order, which disposed of Defendant's Motion for Reconsideration.

Initially, the Court notes that the Court never entered or filed an order denying Plaintiffs' request for additional attorney's fees, as the request was never properly before the Court. Thus, there is no order on the docket for Plaintiffs to appeal from, and Plaintiffs' cross-appeal is, therefore, not properly before the Superior Court and should be quashed. *See* Pa.R.A.P. 301(a)(1). In this regard, the Court notes that Plaintiffs did not file a petition requesting such additional attorney's fees. Further, Plaintiffs did not file a counter-motion for reconsideration, requesting such fees, for the Court to dispose of. Rather, Plaintiffs simply requested additional attorney's fees as part of the facts pleaded in "new matter" filed in response to Defendant's Motion for Reconsideration. In their new matter, Plaintiffs averred that

8

because they were required to defend against Defendant's Motion for Reconsideration, they should be awarded attorney's fees incurred as a result of such a defense. (New Matter ¶ K.)

A party is not required to file a response, let alone new matter, to a motion. Pa.R.C.P. No. 208.3(a) note; Northampton Cnty. Rule of Civil Procedure 208.3(a). Moreover, "new matter" is only properly pleaded to raise affirmative defenses to a complaint or to raise "material facts which are not merely denials of the averments of the preceding *pleading*." Pa.R.C.P. No. 1030(a) (emphasis added). A motion for reconsideration is not a pleading. *See* Pa.R.C.P. No. 1017(a). Consequently, Plaintiffs were not *required* to file a response to Defendant's Motion for Reconsideration and, therefore, were not *required* to incur additional legal fees as averred in their new matter. More importantly, Plaintiffs could not use "new matter" as a substitute for a petition to request additional attorney's fees or a counter-motion for reconsideration requesting such fees, and the Court cannot grant affirmative relief based upon the pleading of new matter.

For all of the above reasons, Plaintiffs' request for additional attorney's fees was never properly before this Court for disposition, no order was entered by this Court disposing of the request, and Plaintiffs' cross-appeal is not properly before the Superior Court and should be quashed.[3]

---

[3] Even if Plaintiffs had properly raised their request for additional attorney's fees in this Court, it would have been denied. In this case, the Court ordered Defendant to pay attorney's fees to Plaintiffs as a sanction for Defendant's contempt of court in violating the Agreed Order. The Court would not penalize Defendant, by awarding additional attorney's

9

BY THE COURT:

_____

ANTHONY S. BELTRAMI, J.

Date: April 25, 2016

---

fees, for exercising his lawful right to request that the Court reconsider its Contempt Decision/Order finding him in contempt.



**IN THE COURT OF COMMON PLEAS OF
NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL ACTION**

MICHAEL LIPESKY and LESLIE DELL, )
      **Plaintiffs** )    **No. C-48-CV-2014-3210**
                )
        **v.** )
                )
JAMES A. MAHAN, )
      **Defendant** )

## DECISION

This matter is before the Court on Plaintiffs' Petition for Contempt, filed on June 17, 2015. Defendant filed an Answer to the Petition on July 1, 2015. A hearing on the Petition was held on October 13, 2015. The parties have submitted briefs, and the matter is ready for disposition.[1]

## FINDINGS OF FACT

1.    Plaintiffs are the owners of real property with an address of 2269 Kovar Lane, Mt. Bethel, Northampton County, Pennsylvania ("Plaintiffs' Property"). (Compl. ¶ 1; Answer ¶ 1.)

---

[1] At the time of the hearing, Defendant was represented by Matthew J. Goodrich, Esquire. On October 26, 2015, Attorney Goodrich was granted leave to withdraw his appearance for Defendant. On the same date, Attorney Goodrich withdrew his appearance for Defendant. On October 29, 2015, Defendant filed a brief acting *pro se*.

1

2. Defendant is the owner of real property with an address of 2277 Kovar Lane, Mt. Bethel, Northampton County, Pennsylvania, where Defendant has resided since January 2010 ("Defendant's Property"). (Compl. ¶ 2; Answer ¶ 2; N.T., 10/13/2015, at 100:7-17.)

3. Specifically, Plaintiffs' Property is "fully described as Northampton County Tax Parcel Identifier No. E12-7-3, containing approximately 0.249 acres of land, and more fully described in a deed recorded in the [Northampton County Recorder of Deeds' Office], in Deed Book 2000-1, Page 107182." (Compl. ¶ 3, Ex. A; Answer ¶ 3.)

4. Specifically, Defendant's Property is "fully described as Northampton County Tax Parcel Identifier E12-7-2D, containing 5.5 acres and more fully described in a deed recorded in the [Northampton County Recorder of Deeds' Office], in Deed Book 2010-1, Page 22763." (Compl. ¶ 5, Ex. C; Answer ¶ 5.)

5. Defendant's Property was created by a conveyance from Plaintiffs' predecessors in title in which Plaintiffs' predecessors reserved a right of way ("Easement") over Defendant's Property consisting of a "'twelve foot lane, or road, from the main road, running along the western lines of [Plaintiffs' Property], and continuing through said [Plaintiffs' Property] to the Delaware River, for the use of" Plaintiffs' predecessors and, by subsequent conveyances, Plaintiffs. (Compl. ¶¶ 9-10, Exs. A, B, D, E; Answer ¶¶ 9-10.)

2

6. The "main road" is River Road, a public road that runs, in relevant part, north to south, parallel to, in relevant part, the Delaware River. (*See* Ex. R-3.)

7. The Easement makes up a portion of what is known as Kovar Lane. (*See id.*)

8. The Easement is the only way to reach Plaintiffs' property from River Road. (N.T., 10/13/2015, at 87:7-11.)

9. In 2012, Defendant created an access road, distinct from the Easement, which turns off from the Easement in a north-easterly direction and provides Defendant access to his property, which is located to the north of Plaintiffs' property. (*Id.* at 101:23-102:13, 104:14-23, 107:4-6.)

10. On approximately November 21, 2013, Defendant placed barriers across a portion of the Easement that runs south to north in front of Plaintiffs' property. (Compl. ¶ 13; *see* N.T., 3/27/2015, at 7:8-11; N.T., 10/13/2015, at 11:1-5.)

11. At approximately the same time, Defendant excavated a portion of the Easement in front of Plaintiffs' Property starting from the northern boundary of Plaintiffs' property line, extending south, and ending at or near the point where the Easement straightens toward River Road ("Disturbed Area"). (Compl. ¶ 15; N.T., 10/13/2015, at 23:3-13, 60:2-61:2, 121:3-133:3; Exs. P-5, P-7, P-8, P-9, P-10, R-3.)

3

12. Prior to these events, the Easement, as it was being used, was paved, including what the parties have referred to as a "soft curve" constituting the turn from the Easement's west-east section to its south-north section. (N.T., 10/13/2015, at 12:25-14:24, 51:15-52:7; Exs. P-2, P-3.)

13. The Disturbed Area, included, at least in part, the soft curve and continued, at least in part, westward toward River Road. (N.T., 10/13/2015, at 131:7-132:23.)

14. On April 10, 2014, Plaintiffs filed a Complaint, asserting claims for ejectment and trespass against Defendant.

15. On March 17, 2015, the parties reached a settlement agreement, which was adopted as an Order of Court ("Agreed Order") that was filed on March 27, 2015.

16. The relevant portions of the Agreed Order were entered into the record as follows:

> MR. GOODRICH: In this matter, [Defendant] will contract with Mr. Scott Policelli ["Policelli"] for purposes of obtaining a metes and bounds description which will represent the legal description of what we have been referring to as the soft curve, which would be on the inside of the curve of [Defendant's] property.
>
> That metes and bounds description will be committed to deed by way of likely a corrective deed filed here with the Recorder of Deeds['] office in Northampton County, Pennsylvania, to account for a new legal description representing the [E]asement[,] which we are now confirming from River Road

4

making the soft curve and going to the edge of [Plaintiffs'] property line.

MR. LAYMAN:     The northern edge.

MR. GOODRICH: Yes, the northern edge.

THE COURT:     And that will replace the existing easement of record?

MR. GOODRICH: That's correct, judge.

. . . .

MR. GOODRICH: Jim Potter, who is the fire chief in Portland as well as a supervisor at the Pennsylvania Department of Transportation, will provide advice and counsel as to an appropriate turning radius to enable the fire truck to access that road around that soft curve.

. . . .

For purposes of deliveries in the form of propane or mail, UPS, what have you, FedEx, those individuals will be permitted to make a small K turn, which would go onto [Defendant's] property potentially but would not be part of the [E]asement, so that they may turn around at that point by virtue of a three point, or K turn, and proceed back out the [E]asement onto River Road.

. . . .

[Defendant] will pave the soft curve as well as the disturbed area of asphalt or macadam. I have a quote from Mr. Larry Hallett . . . indicating that he would be able to perform that service for 1,500 square feet of material and perform that job on or before August 31st of 2015, in the amount of $2,550.

I would escrow $2,550 in my office to ensure that that takes place and is paved by [Defendant], who agrees to pave that portion of the [E]asement.

. . . .

5

All blockages would be removed from the [E]asement.

. . . .

THE COURT: All right. Mr. Mahan, did you also hear the agreement as outlined?

[Defendant:] Yes.

THE COURT: Do you have any questions about it?

[Defendant:] No.

THE COURT: And you agree to it?

[Defendant:] Yes.

THE COURT: All right. Then I adopt the agreement as an enforceable Order of this court.

(N.T., 3/17/2015, at 2:20-3:19, 3:23-24:4, 4:15-23, 6:8-19, 7:10-11, 9:3-10.)

17. In January of 2015, Plaintiffs moved from Plaintiffs' Property to New Jersey. (N.T., 10/13/2015, at 36:7-18.)

18. Plaintiffs now lease Plaintiffs' Property to Jason Abbott ("Abbott"). (*Id.* at 36:19-24, 59:13-60:4.)

19. In approximately April 2015, several weeks after the Agreed Order, Defendant removed the barriers he had placed on the Easement but in their place dug a trench/ditch several feet in depth and length. (*Id.* at 11:6-12:17; Exs. P-1, P-5.)

20. In approximately May 2015, while Abbott was away from the property for two hours, Defendant excavated approximately eighty additional feet of the existing pavement on the west-east portion of the Easement. (N.T., 10/13/2015, at 19:25-20:16, 21:14-24:10, 61:17-66-23, 132:25-133:8; Exs. P-6, P-7.)

21. When Abbott returned to the property, Defendant was sitting on a backhoe, which he owns and commonly uses, near the newly excavated portion of the Easement. (N.T., 10/13/2015, at 64:10-65:25.)

22. On June 17, 2015, Plaintiffs filed the instant Petition for Contempt, alleging that Defendant violated the Agreed Order by creating the ditch and excavating the additional portion of the existing pavement on the Easement.

23. The barriers and ditch have been removed from the Easement and are no longer present. (*Id.* at 46:18-25.)

24. On June 18, 2015, Policelli prepared a metes and bounds description representing his depiction of the soft curve portion of the Easement from previously recorded documents rather than a metes and bounds description of the existing paved Easement and Disturbed Area that were being used by the parties at the time the Agreed Order was entered into. (*Id.* at 145:20-147:3; *see* Ex. R-1.)

25. On June 29, 2015, Policelli prepared a survey depicting the dimensions of the Easement, the proposed location of the K turn, and the portion of the Easement that Defendant would repave. (*See* Ex. R-3.)

26. Plaintiffs received the metes and bounds description on September 14, 2015. (N.T., 10/13/2015, at 42:4-8.)

27. Plaintiffs were not provided with the survey until October 8, 2015. (*Id.* at 42:4-11.)

28. On August 27, 2015, Defendant installed new pavement in front of Plaintiffs' property, on a portion of the south-north segment of the Easement. (*Id.* at 24:11-33:13, 52:15-25, 67:6-18, 70:3-72:8; Exs. P-8, P-9, P-10, P-11, P-12.)

29. At the time the new pavement was installed on August 27, 2015, Defendant yelled at Abbott, called the police to the property, and asked a worker who was present whether Defendant "should go in his house and get some firearms." (N.T., 10/13/2015, at 67:19-68:16, 69:8-24.)

30. Defendant testified that he assumed that the metes and bounds description matched the section of the survey marked "area to be paved," since both were created by Policelli pursuant to the Agreed Order. (*Id.* at 111:2-10.)

31. Policelli's metes and bounds description includes only the "soft curve" of the Easement, not the entire Easement or the entirety of the Disturbed Area. (*Id.* at 145:20-147:3, 150:1-18.)

8

32. The curved portion of the area marked "to be paved" on the survey aligns with the metes and bound description of the soft curve; however, the entire area marked "to be paved" does not encompass the Disturbed Area that was to be repaved pursuant to the Agreed Order. (*Id.* at 147:4-152:2.)

33. Defendant instructed Policelli to include the south-north portion of the area marked "to be paved" in the survey. (*Id.* at 154:23-155:7.)

34. Policelli prepared the survey after conducting a site visit at the properties in approximately early June of 2015. (*Id.* at 150:19-25, 160:2-7.)

35. At the time of Policelli's site visit, the Easement, starting from River Road, was only paved up to Defendant's access road, with the remainder of the Easement being gravel. (*Id.* at 161:10-21.)

36. The new pavement installed on August 27, 2015, followed the area marked "to be paved" on the survey and constituted 1,183 square feet. (*Id.* at 113:1-13, 123:4-8, 148:16-22.)

37. The pavement installed on August 27, 2015, did not cover the existing soft curve that was being used by Plaintiffs nor the entirety of the Disturbed Area, both of which, as of that date, were still gravel. (*Id.* at 121:3-132:23.)

38. The portions of the Easement that Defendant excavated in November of 2013 as well as in May of 2015 are both to the east of the access road that Defendant created in 2012. (*Id.* at 133:20-23.)

39. Defendant contends that the pavement called for in the Agreed Order only related to the area on the survey marked "to be paved." (*Id.* at 138:13-23.)

40. Plaintiffs paid Peter Layman, Esquire, $1,777.50 in attorney's fees for representing them in connection with the instant contempt petition. (*Id.* at 33:18-34:19; Ex. P-14.)

## DISCUSSION

Plaintiffs filed the instant Petition for Contempt on June 17, 2015. Clearly, the new pavement installed by Defendant on August 27, 2015, had not yet occurred when the Petition was filed. However, on September 14, 2015, the Court held a conference with the parties, at which time Plaintiffs presented to the Court the photographs of that pavement that were introduced as exhibits at trial. At that conference, it was made clear that the issue of whether the pavement installed on August 27, 2015, complied with the Agreed Order would be considered at the hearing. Therefore, by way of an implied amendment to the Petition, said pavement, although installed later in time than the filing of the Petition, was within the scope of the contempt hearing.

10

The law is well-established that "'[c]ourts possess an inherent power to enforce their orders by way of the power of contempt.'" *Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty.*, 613 Pa. 1, 32 A.3d 639, 653 (2011) (*Cromwell Township*) (quoting *Commonwealth v. Bowden,* 576 Pa. 151, 838 A.2d 740, 760 (2003)). "Courts have broad discretion in fashioning and administering a remedy for civil contempt." *Mulligan v. Piczon,* 739 A.2d 605, 611 (Pa. Cmwlth. 1999), *aff'd,* 566 Pa. 214, 779 A.2d 1143 (2001).

"'The purpose of civil contempt is to compel performance of lawful orders[.]'" *Gunther v. Bolus,* 853 A.2d 1014, 1018 (Pa. Super. 2004) (quoting *Cecil Twp. v. Klements,* 821 A.2d 670, 675 (Pa. Cmwlth. 2003)). [When a] trial court's . . . order [i]s intended to coerce [a party] to comply with [a previous] order[,] it is a civil contempt order. "Pennsylvania courts . . . have stated that in civil contempt proceedings, the burden is generally on the complaining party to prove noncompliance with the court order by a preponderance of the evidence." *Schnabel Assocs., Inc. v. Bldg. & Constr. Trades Council of Phila. & Vicinity, AFL–CIO,* 338 Pa. Super. 376, 487 A.2d 1327, 1336–37 (1985). However, mere noncompliance with a court order is insufficient to prove civil contempt. *Bold v. Bold,* 207 Pa. Super. 365, 939 A.2d 892 (2007).

> 'To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had *notice* of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was *volitional*; and (3) that the contemnor acted with *wrongful intent*.'

*Epstein v. Saul Ewing, LLP,* 7 A.3d 303, 318 (Pa. Super. 2010) (emphasis added) (quoting *Lachat v. Hinchcliffe,* 769 A.2d 481, 489 (Pa. Super. 2001)).

*West Pittston Borough v. LIW Invs., Inc.,* 119 A.3d 415, 421 (Pa. Commw.

2015) (footnote omitted).

> [I]n order for a trial court to hold a party in contempt, [ordinarily] a five-step process must first

11

be completed . . . . That process includes: [(]1) a rule to show cause . . .; [(]2) an answer and hearing; [(]3) a rule absolute; [(]4) a hearing on the contempt citation; and [(]5) an adjudication of contempt.

*Cleary v. Dep't of Transp.*, 919 A.2d 368, 372 (Pa. Cmwlth. 2007). "Fulfillment of all five factors is not mandated, however. '[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense.'" *Wood v. Geisenhemer–Shaulis*, 827 A.2d 1204, 1208 (Pa. Super. 2003) (quoting *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa. Super. 2002))[.]

*West Pittston Borough*, 119 A.3d at 421 n.10.

"A[n agreed order], although negotiated by the parties, is a judicial act which is enforceable via the court's contempt power." *Jack Rees Nursing and Rehabilitation Services v. Hersperger,* 410 Pa. Super. 409, 600 A.2d 207, 209 (1991). The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. *Bata v. Central-Penn National Bank of Philadelphia,* 433 Pa. 284, 249 A.2d 767 (1969); *C.R. by Dunn v. The Travelers,* 426 Pa. Super. 92, 626 A.2d 588 (1993). When contempt is civil in nature, as it is in this case, a court must impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. *Kramer v. Kelly,* 265 Pa. Super. 58, 401 A.2d 799, 802 (1979).

*Cecil Twp. v. Klements*, 821 A.2d 670, 675 (Pa. Commw. 2003). Finally, an award of attorney's fees payable to the aggrieved litigant is a proper sanction in a civil contempt order. *Geisenhemer-Shaulis*, 827 A.2d at 1208.

The Court begins with the first element—whether Defendant failed to comply with the Agreed Order. Based upon its plain language, the Agreed

12

Order required Defendant to do the following five things: 1) hire Policelli to create a metes and bounds description of the *entire Easement* as the paved Easement, including the Disturbed Area, existed and was used by the parties at the time of the Agreed Order, from River Road to the northern boundary of Plaintiffs' property, with the intention of using that metes and bounds description as the basis for corrective deeds identifying the new metes and bounds description as the Easement in the parties' deeds; 2) obtain the opinion of Fire Chief Jim Potter as to the proper dimensions of the Easement's "soft curve" in order to allow safe passage of a firetruck and emergency vehicles through the Easement; 3) allow emergency vehicles, vehicles delivering propane, utility services, mail, and packages, to traverse from the Easement's northern boundary back to River Road by performing "K turns" or three-point turns in a manner that, if necessary, cross the Easement's northern and/or western boundaries, thereby temporarily invading, only for purposes of completing such turns, Defendant's property located beyond the boundaries of the Easement;[2] 4) repave the Disturbed Area as well as a soft curve at the Easement's directional intersection; and 5) remove all barriers placed upon the Easement.

Starting with the first requirement, it does not appear that Policelli committed the entire Easement, as used by the parties at the time of the

---

[2] The Agreed Order also permitted residents fleeing an emergency to use the Easement.

13

Agreed Order, to a metes and bounds description. Rather, he testified that the metes and bounds description that he drafted represents only the soft curve portion of the Easement located at its west-east and south-north intersection as taken from the deeds of record. In all likelihood, Policelli limited the metes and bounds description to the soft curve because of the following language in the Agreed Order: "[Defendant] will contract with [Policelli] for purposes of obtaining a metes and bounds description which will represent the legal description of what we have been referring to as the soft curve." (N.T., 3/27/2015, at 2:20-3:1.) However, the section immediately following that language states that the purpose of the metes and bounds description was "*to account for a new* legal description representing the [E]asement[,] . . . from River Road making the soft curve and going to the edge of [Plaintiffs'] property line," as well as to "*replace* the existing easement of record." (*Id.* at 3:7-12, 16-19 (emphasis added).)

A plain reading of these provisions of the Agreed Order indicates that the purpose of creating the new metes and bounds description was to replace the descriptions of the Easement in the deeds of records which do not necessarily match Kovar Lane, including the paved portion and the Disturbed Area as used by the parties, with a legal description of the latter, which would then be committed to corrective deeds intended to pass with any future conveyances of the parties' properties. Clearly, this was not

14

done. As a result, Defendant has not complied with the first requirement of the Agreed Order.

Turning to the second requirement, there was no testimony or evidence at trial concerning Jim Potter's involvement, or lack thereof, with Policelli's surveying work and/or Defendant's new pavement installation. Therefore, Plaintiffs, who have the burden of proof, have not introduced any evidence proving that Defendant violated the second requirement.

As for the third requirement, regarding the K turn, there was no evidence that Defendant has disallowed any emergency vehicles or delivery vehicles from performing a K turn that, if necessary, crosses the boundaries of the Easement onto Defendant's property. Similarly, there is no evidence that Defendant has prevented anyone from using the Easement to flee an emergency. The Court agrees with Defendant's argument that nothing in the Agreed Order required him to, as Plaintiffs argue, "'dimension a K turn.'" (Def.'s Br. at 3; see Pls.' Br. at 6-9.) As a result, the third requirement of the Agreed Order has not been violated based upon the record before the Court.

Skipping ahead to the fifth requirement, there is no dispute that the barriers that once existed on the Easement are no longer present. Therefore, the fifth requirement has been complied with. As for the ditch seen in Exhibit P-5, nothing in the Agreed Order specifically prohibited Defendant from creating it. Still, even assuming, *arguendo*, that the

15

creation of the ditch was an act of contempt, said ditch has been removed. This being a civil contempt proceeding, no purpose would be served by holding Defendant in contempt for conduct that has been remedied.

That brings the Court to the fourth requirement of the Agreed Order. The Court first notes that regardless of whether or not the Disturbed Area was, at the time of its excavation in November of 2013, part of the Easement as described in the relevant deeds, Defendant nonetheless agreed to repave it. The testimony and photographic evidence demonstrate that the Disturbed Area spanned the entire south-north portion of the Easement and also, to some extent, wrapped around the soft curve, ending at the point in Exhibit P-7 where the dirt road changes color. (*See* N.T., 10/13/2015, at 22:14-24:5, 60:2-61:2; Ex. P-7.) Abbott's testimony made clear that the "gray" section of dirt depicted in the lower half of Exhibit P-7 had already been excavated prior to May of 2015. (*See* N.T., 10/13/2015, at 61:17-64:9.) A review of Exhibits P-8, P-9, P-10, and P-11 reveals that the pavement installed on August 27, 2015, did not fully cover the Disturbed Area as it existed as of March 17, 2015.

Furthermore, in the Agreed Order, Defendant agreed that he would "pave the *soft curve as well as* the" Disturbed Area. (N.T., 3/17/2015, at 6:7-9 (emphasis added).) Thus, in addition to the Disturbed Area, Defendant agreed to repave any portion of the turn where the Easement transitions from its west-east segment to its south-north segment such that

16

a vehicle traversing the Easement is able to make a paved turn. Exhibits P-10 and P-11 reveal that Defendant unquestionably failed to comply with that part of the Agreed Order. In view of Exhibits P-2 and P-3, which depict the state of the soft curve as it existed prior to November 2013, Defendant's argument that the thin, curved portion of new pavement shown in Exhibits P-10 and P-11 constitutes a soft curve that complies with the Agreed Order is, at best, disingenuous. For all of these reasons, because Defendant agreed to repave the entire Disturbed Area and to pave a soft curve and failed to do so, the fourth requirement of the Agreed Order was violated.

Further, it is clear that Defendant had notice of the repaving requirement, which he agreed to on the record. In addition, Defendant had better notice than anyone of what constituted the Disturbed Area, as he was the one who created it. It is also clear that Defendant's violation of the requirement was volitional.[3] The question, then, is whether Defendant's failure to repave the entire Disturbed Area and to pave a realistic soft curve was done with wrongful intent. The Court finds that it was. Defendant's interactions with Jason Abbott, as detailed in credible testimony, his legal arguments, most of which attempt to usurp the Court's role in determining what is and what is not the "scope" of the underlying Complaint, the Agreed

---

[3] Volition is "1. The ability to make a choice or determine something. 2. The act of making a choice or determining something. 3. The choice or determination that someone makes." BLACK'S LAW DICTIONARY (10th ed. 2014). Even though it was not Defendant himself who installed the pavement on August 7, 2015, Defendant knew that the paving would not cover the entire Disturbed Area and a soft curve but chose to allow it to be paved that way nonetheless.

17

Order, and the instant Petition, (*see generally* Def.'s Br.), his spiteful attitude towards his obligation to allow Plaintiffs to access their property through the Easement, (*see, e.g.,* N.T., 10/13/2015, at 124:13-126:17, 130:2-4, 137:6-138:15), and even his in-courtroom behavior, which was often confrontational and evasive, (*see, e.g., id.* at 106:3-11, 121:24-122:3, 122:15-23, 124:20-21, 127:20-25, 129:14-17, 129:23-130:9, 132:3-10, 133:17-19, 138:5-9, 142:6-10), all make clear that Defendant's intent throughout these proceedings has been, primarily, to interfere with Plaintiffs' property rights and to frustrate what the Court and all involved parties hoped would be an amicably-carried-out settlement agreement. For all of these reasons, the pavement installed by Defendant on August 27, 2015, is unacceptable and places him in civil contempt of court.

Finally, Plaintiffs argue that Defendant's excavation of a paved portion of the west-east section of Kovar Lane in May 2015, as depicted in Exhibits P-6 and P-7, constitutes a violation of the Agreed Order. More specifically, Plaintiffs argue that "[a]lthough it is true that the [Agreed] Order does not explicitly state that Defendant may not rip up new [pavement], the fact that Defendant agreed to replace the entire [Disturbed Area] certainly demonstrates that the intent of the settlement agreement and [Agreed] Order was to recreate the preexisting paved portion of Kovar Lane." (Pls.' Br. at 3-4.) Plaintiffs go on to argue that "[t]he agreement will be frustrated if an additional 70 feet of Kovar Lane—serving only [Plaintiffs' Property] is

18

allowed [to be] ripped up by" Defendant. (*Id.* at 4.) Plaintiffs' argument itself, while plausible, states why the Court cannot hold Defendant in contempt for the May 2015 excavation--the Agreed Order "does not explicitly state that Defendant may not rip up new [pavement]." (*Id.* at 3.) It is settled that "in order to punish a person for contempt, a 'plausible reading' [of the Court's Order] is not enough. *Carborundum Company v. Combustion Engineering, Inc.,* 263 Pa. Super. 1, 396 A.2d 1346, 1349 (1979). All inferences and ambiguities in the underlying order must be construed in favor of the alleged contemnor." *Lachat v. Hinchcliffe,* 769 A.2d 481, 490 (Pa. Super. 2001). Thus, while Defendant's actions are certainly vindictive, are most likely prohibited by applicable law, *see Taylor v. Heffner,* 58 A.2d 450, 454 (Pa. 1948), and certainly may entitle Plaintiffs to legal relief by way of an amended complaint or a new action, the Court is without authority to hold Defendant in "contempt of court" for them.

WHEREFORE, the Court enters the following:

19

**IN THE COURT OF COMMON PLEAS OF**
**NORTHAMPTON COUNTY, PENNSYLVANIA**
**CIVIL ACTION**

MICHAEL LIPESKY and LESLIE DELL, )
      **Plaintiffs**              )     **No. C-48-CV-2014-3210**
                            )
             **v.**                )
                            )
JAMES A. MAHAN,             )
      **Defendant**           )

## ORDER OF COURT

AND NOW, this 29<u>th</u> day of January, 2016, following a hearing held on October 13, 2015, Plaintiffs' Petition for Contempt, filed on June 17, 2015, is hereby **GRANTED**, in part. Defendant James A. Mahan is hereby held in civil contempt and is fined in the amount of $5,000.00, payable to Plaintiffs, as a sanction for the contempt.

Defendant may purge himself of the contempt, and from payment of the fine, by completing the following two requirements within 120 days:

1. Defendant shall cause Scott Policelli, in consultation with the parties and/or their counsel, to draft a metes and bounds description of the paved Kovar Lane, from River Road to the northern end of Plaintiffs' property, as it existed prior to Defendant's excavation of portions of the

1

pavement in November 2013 and May 2015 ("disturbed areas"), to include the disturbed areas and to constitute a new legal description of the easement granted to Plaintiffs, although not necessarily matching the location of the easement of record, to be recorded in corrective deeds intended to replace the existing legal description of the easement in the parties' deeds, with the intent of this provision being to identify the location of the easement as used by the parties as of November 2013, not necessarily the easement of record; and

2.     Defendant shall repave that portion of the pavement excavated in November 2013 in the same location that the pavement existed as of November 2013.

Defendant shall pay Plaintiffs the sum of $1,777.50 for attorney's fees.

BY THE COURT:

_____
                                                                    J.

2